Desmond, J.
The principal question is as to the validity and applicability of this provision of section 1170-b of our Civil Practice Act, enacted in 1953: “In an action for divorce, separation or annulment, or for a declaration of nullity of a void marriage, where the court refuses to grant such relief by reason of a finding by the court that a divorce, annulment or judgment declaring the marriage a nullity had previously been granted to the husband in an action in which jurisdiction over the person of the wife was not obtained, the court may, nevertheless, render in the same action such judgment as justice may require for the maintenance of the wife.”
In 1948 plaintiff, then domiciled in Nevada, and defendant, then domiciled in California, married in Connecticut and together established in California a domicile which continued (despite much travel in this country and Europe) till they separated in September, 1952. After the separation the wife immediately went to New York City. In October, 1952 she sued in New York for a separation but that suit was dismissed *347 because of the one-year residence requirement of subdivision 3 of section 1165-a of the Civil Practice Act. After a visit to California, plaintiff returned to New York in February, 1953, and has since resided in this State. In March, 1953 defendant husband brought in Nevada a suit for divorce, process in which was served on the wife in New York. The wife did not appear or answer in that suit which in June, 1953 produced a divorce decree in favor of the husband. In April, 1954 plaintiff, effecting service through publication of the summons and sequestration of his assets (see Civ. Prac. Act, § 1171-a) in New York, commenced this action in the Supreme Court, New York County, praying for a separation on the ground of cruelty and abandonment, and for an award of alimony (there were no children of the marriage). Defendant, appearing specially, moved to vacate the sequestration and to dismiss this action on the ground that the marriage no longer existed, and that there was in New York State no matrimonial domicile or status, or domicile of plaintiff. That motion of defendant was heard and dismissed before trial but defendant availed himself of the permission then given him to plead in his answer the alleged lack of jurisdiction over his person and over the subject matter of the cause. His answer in this suit, besides denying all the complaint’s allegations of cruelty and abandonment, contained also a purported complete defense in which he called the court’s attention to the Nevada divorce judgment and asserted that “ full faith and credit” therefor was, under the Federal Constitution, a bar to the maintenance of this action. We agree with defendant that he has not, by his subsequent activities in the case, waived the contentions he is still making as to lack of personal jurisdiction (see Civ. Prac. Act, § 237-a, subd. 3, par. [c]; subd. 4). We construe the judgment below not as one in personam against defendant but as fixing the amount of the alimony and directing its payment out of the sequestered property.
When this action came to trial, plaintiff went forward with testimony as to the alleged acts of cruelty and abandonment. Defendant did not take the stand and called no witnesses to deny that testimony. Plaintiff attempted also to establish factually that defendant’s previously - obtained Nevada divorce was invalid because, she urged, defendant did not have a bona fide domicile in that State (Williams v. North Carolina, 325 U. S. 226). We can dispose of that latter issue right now by *348 holding that there was sufficient evidence to justify the finding made by both courts below in this cause that defendant did have a good faith domicile in Nevada for a sufficient period before his divorce decree was handed down. That proof included a showing that defendant had lived and voted and owned property in Nevada for many years before his marriage to plaintiff, that plaintiff and defendant lived there together in the early months of their marriage, that defendant returned there some months before the divorce and that defendant has continuously maintained a residence in Nevada since the divorce. The various contradictory statements shown to have been made by defendant on this subject did no more than set up a question of fact as to the good faith of the Nevada predivorce domicile, an issue of fact which has been conclusively settled in favor of defendant by the courts below.
After both sides had put in proof, defendant renewed his motion, previously made at the end of plaintiff’s case, to dismiss the complaint on the grounds of lack of jurisdiction and of the alleged binding effect of the prior divorce. The trial court, holding that the Nevada divorce was binding in New York to the extent of dissolving the marriage, dismissed so much of the complaint as asked for a judgment of separation but (on the authority of Civ. Prac. Act, § 1170-b, supra) continued to entertain so much of the action as prayed for support and maintenance. Defendant objected to this on the jurisdictional grounds already described, also on the grounds that the Nevada judgment had terminated the marriage and all its obligations, that section 1170-b is unconstitutionally vague and lacking in standards as to what “ justice may require ”, that section 1170-b if so applied would violate not only New York common law but the full faith and credit requirement of the Federal Constitution, and that plaintiff had not been a resident of New York State for the one-year period required by subdivision 3 of section 1165-a of the Civil Practice Act, nor for any other period. The court again denied defendant’s dismissal motion.
The trial court then took the proofs offered by plaintiff as to amounts suitable and necessary for her support. The trial came to an end after a renewal and another denial of defendant’s dismissal motions. Later, the court awarded plaintiff $250 per week for support plus an award of $3,500 for counsel fees and expenses (her counsel had previously been awarded and *349 paid $2,500 for such fees and expenses). The support money was directed to be paid from June 8, 1954, the date of the commencement of this action. Defendant’s brief argues against the amount of this award and as to its retroactivity, but these determinations in those respects were, on this record well within the discretion of the trial court, affirmed by the Appellate Division. The same answer goes to so much of plaintiff’s cross appeal as disputes the adequacy of the support allowance.
We come, then, to the remaining, and principal, questions of law:
1. Does this case come within the language and intent of section 1170-b of the Civil Practice Act?
2. If the answer to the first question is ‘ ‘ yes ’ ’, is section 1170-b, so applied, invalid as violative of the Federal Constitution, or otherwise?
There should be no doubt as to the applicability hereto of section 1170-b. This is certainly an action for separation, where the court refused “ to grant such relief by reason of a finding by the court that a divorce * * * had previously been granted to the husband in an action in which jurisdiction over the person of the wife was not obtained Plaintiff, having resided in this State for the required one-year period, had standing to bring such a suit and jurisdiction was effected by the sequestration of defendant’s New York assets. There is nothing in the statute’s language to suggest that it was intended to apply only to marriages where the parties had lived together in this State as their matrimonial domicile. Presumably, the Legislature was moved to action by the clear and cogent reasoning of a report made to the Legislature by the Law Revision Commission (1953 Report of N. Y. Law Rev. Comm., pp. 463-480). The report (p. 467) cited Estin v. Estin (296 N. Y. 308, affd. 334 U. S. 541) as holding that “ A wife who has obtained in New York a separation order with maintenance provisions may enforce these provisions against her husband even though he may subsequently have obtained an ex parte divorce entitled to recognition under the Full Faith and Credit Clause of the Constitution of the United States.” But, the commission pointed out (as had one of the Supreme Court opinions in Estin) that there was no procedure available in New York State whereby similar protection of her rights to support could be had by a wife unless she, prior to the foreign divorce, had obtained an *350 alimony order, in a separation suit, as had Mrs. Estin. The procedural difficulty in this State was, of course, that our courts have no power without statutory authority to grant maintenance to a wife and (before § 1170-b was passed) there was no statutory authority to award such alimony except as incidental to a matrimonial action (Ramsden v. Ramsden, 91 N. Y. 281; Erkenbrach v. Erkenbrach, 96 N. Y. 456; Johnson v. Johnson, 206 N. Y. 561; Weintraub v. Weintraub, 302 N. Y. 104; Civ. Prac. Act, § 1170). Recognizing that the doctrine of “ divisible divorce ” had been firmly established in law (Estin v. Estin, supra; Lynn v. Lynn, 302 N. Y. 193, cert, denied 342 U. S. 849), the Law Revision Commission and the Legislature set out to remove the procedural bar against a wife’s obtaining in the New York courts protection of those rights to support which remained to her after and despite a foreign divorce, even though that foreign divorce had effectively terminated her marriage. Therefore, the purpose, language and effect of section 1170-b support the judgment granted plaintiff in this case. What other and different situations the statute may properly be applied to, we need not and should not now specify.
The second question of law is as to the validity of the statute itself. Defendant’s argument against validity boils down to an assertion that the Estin holding {supra) applies to the particular Estin fact pattern only. Defendant says that the court in Estin was dealing with a prior New York separation-alimony judgment and a later Nevada marriage-status-termination judgment, and giving effect to both those judgments. Such is not, of course, the situation here. But the situation here is in its material elements just the same as in Armstrong v. Armstrong (350 U. S. 568), where all the Justices seem to have agreed that a State may validly grant alimony after and in spite of a foreign ex parte divorce. (See, also, May v. Anderson, 345 U. S. 528, as to custody of children.) We must look to the rationale, not the special facts, of Estin and Armstrong and we find that rationale to be the same as was expressed in our Lynn v. Lynn opinion (302 N. Y. 193, 200-201, supra) thus: “ a divorce decree may be completely effective to dissolve a marriage and yet completely ineffectual to alter certain legal and economic incidents of that marriage ” (see Hopson v. Hopson, 221 F. 2d 839). Mrs. Estin, fortunately for her, had gotten her support rights defined and adjudicated by a New York judgment before *351 her husband went off for his foreign divorce. Section 1170-b now makes it possible for a wife to get such an adjudication after the foreign-State divorce. Until Williams v. North Carolina (325 U. S. 226, supra) made effective in this State ex parte divorces like that gotten by this defendant, such divorces had no effect here as to either marriage status or property rights. Then came Williams v. North Carolina, and New York had to give effect to such decrees as terminating marriages. But in the background was Pennoyer v. Neff (95 U. S. 714) and its ancient and undisturbed rule that personal service within the State where suit is brought (or waiver of such service) is required for due process of law to support a personal judgment. So, that part of a foreign (nonpersonal service but otherwise jurisdictionally valid) divorce decree which dealt with status had to be given effect in New York as terminating the marriage but was entitled to no effect at all so far as support or other property rights were concerned. The question is not whether the economic liabilities of a marriage can validly be held to survive a valid divorce. The point is that the divorce obtained by defendant was valid as to status only, but not as to property. The holding that such a divorce judgment was not effective as to property meant necessarily that the one who obtained it could claim no protection from it as to property. Defendant would have us say that the power to preserve, unimpaired by a foreign nonpersonal divorce, the liability of a husband to support his wife, is a power of that State only which has “ jurisdiction of the marriage ”. We find no such strict limitation. True, New York never had jurisdiction of this marriage res in the sense that New York was the parties’ domicile while they lived together. But when the husband, abandoning his wife, left their California domicile to establish a Nevada domicile for his own purposes, the abandoned wife had a right to set up a New York domicile for herself and bring the matrimonial domicile to New York with her (Hunt v. Hunt, 72 N. Y. 217, 242, 243; Dean v. Dean, 241 N. Y. 240, 244; Matter of Daggett, 255 N. Y. 243, 247). That right she exercised in this instance before the Nevada judgment was entered and she satisfied New York’s residence requirements before suing for a separation (Civ. Prac. Act, § 1165-a). We need not decide whether she would have the same right to come into New York, even after a foreign-State divorce, to take advantage of section 1170-b.
*352 We will now consider briefly several other arguments advanced by defendant. He says that his Nevada judgment has been denied the “ full faith and credit ” the Federal Constitution (art. IY, § 1) demands for it. But that assertion involves two erroneous assumptions and either of those errors destroys the alleged constitutional point. Defendant assumes that New York would not enforce its section 1170-b as against a prior nonpersonal New York divorce judgment, and then goes on to assume that New York’s suppositious refusal to apply section 1170-b as against one of its own New York judgments would mean that New York would be giving a foreign judgment less protection than a local judgment as against section 1170-b. As to defendant’s first assumption, there is nothing in our statute to support the conclusion that it is. inapplicable where the prior judgment was obtained in New York (the Law Revision Commission report and recommendation certainly make no such distinction, but instead recommends applicability “whether the husband’s ex parte adjudication of marital status was obtained in a foreign court or a New York court”; p. 468). Actually, the basis for this assumption by defendant is an idea which pervades defendant’s whole argument — that is, that it is fundamental and unchangeable New York law that an already divorced wife may never be awarded maintenance by a New York court and that an action for separation or divorce in New York presupposes an existing valid marriage (see Bannon v. Bannon, 270 N. Y. 484, 488). But section 1170-b, to the extent that it applies, has changed that old New York policy. We can go even farther, however, and declare that even if section 1170-b was unavailable as against a New York divorce, that circumstance would not mean that the New York judgment was getting more, and the Nevada judgment less, faith and credit in New York. Nevada’s judgments put in evidence in New York are entitled to the same effect as they are given in Nevada, and, to avoid unconstitutional discrimination (U. S. Const., art. IY, § 2), the same effect New York’s own similar judgments are given in New York. But under the “ divisible divorce ” doctrine, defendant’s Nevada divorce had no effect (any more than it said anything in terms) as to plaintiff’s property rights. Its sole effect was to end a marriage and it has been given that effect in New York.
Defendant brands as error the making by the Appellate Divi *353 sion, in its order and in its judgment, of a new finding of fact that defendant had violently assaulted plaintiff and had been guilty of other cruel treatment of plaintiff which endangered and injured her health. Since the record justifies that finding, the Appellate Division had the power to make it although the trial court had not done so (see Bernardine v. City of New York, 294 N. Y. 361, 366). As to that finding being contrary to the Nevada court’s earlier determination that defendant was entitled to a divorce because of plaintiff’s “ Extreme Cruelty ”, it is settled that the Nevada finding in an in rem proceeding, while conclusive as to the marriage status being dissolved, does not bind plaintiff personally nor is it conclusive as to any fact upon which the Nevada judgment is based (Durant v. Abendroth, 97 N. Y. 132, 141; Matter of Holmes, 291 N. Y. 261, 270, citing Restatement, Judgments, § 74).
Other charges by defendant of deprivation of due process are without merit. He complains that he was denied a fair opportunity to present proof as to alimony but the record does not bear him out. He complains as to the vagueness of the phrase in section 1170-b “ as justice may require ”. But that same phrase has been for many years in section 1170 of the Civil Practice Act with respect to questions of custody of children and temporary and permanent alimony in separation and divorce suits. It means (see as used in Election Law, § 330) that there are no ££ as matter of law ’ ’ requirements one way or the other as to those matters which are to be dealt with in the discretion of the courts, on all the facts. Similarly without substance is defendant’s statement that he was given no notice by pleadings or otherwise, in this suit brought ostensibly for a separation, that even if no separation were to be granted, an award for maintenance might still be in the offing. Adequate notice was given by the statute itself which warned that if a separation should be refused because of the foreign divorce judgment, maintenance might still be awarded.
The judgment should be affirmed, with costs to plaintiff.