HAYDEE DE PENA, Respondent, v. FREDDY DE PENA, Appellant.

First Department, March 18, 1969.

*Leon Fuhrer* of counsel (*Goldstein & Goldstein,* attorneys), for appellant.

*Leonard Koerner* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondent.

EAGER, J. P.  This is a support proceeding instituted in Family Court and the respondent-appellant appeals from an order of that court requiring him to pay a weekly sum for the support of the petitioning wife and a child of the parties.  The appellant, claiming to be a domiciliary of the Dominican Republic, sought a dismissal of the proceeding on the ground that a divorce decree procured there had dissolved the marriage of the parties and limited his responsibilities to a provision therein for the support of the child.  The Family Court, however, refused to accord recognition to the foreign divorce decree and rendered the order of support.

Concededly, the parties were originally domiciliaries of the Dominican Republic.  The appellant first came to the United States in 1959 and, although he returned to the Dominican Republic a year later, he came back here on June 19, 1962.  Since then he has continuously resided in New York City although he remains a citizen of the Dominican Republic.  He insists that he does not intend to become a citizen or domiciliary of the United States but that he will return to the Dominican Republic.

The petitioner came to the United States with her aunt in August, 1962.  She and the appellant were married in the Dominican Consulate in New York City on November 8, 1963.  As husband and wife, they established and maintained their residence here and their child was born here in September, 1964.

The parties separated in November, 1964, but the appellant husband remained here.  In January or February, 1965, he instituted a divorce proceeding in the Dominican Republic and the petitioner prepared to defend the same.  However, she did not appear in the proceeding and it was either stayed or discontinued.  Thereafter, in July, 1965, the appellant commenced

a second action for divorce in the Dominican Republic. His appearance there in the action was by an attorney and he never left this country. A decree of divorce was rendered in his favor in this second action, divorcing the parties on the ground of "incompatability of characters". Process was not personally served upon petitioner within the Dominican court's jurisdiction and she did not appear in the action. Thus, the court did not acquire personal jurisdiction over her.

The petitioner and her son have never left the United States and although she is still a citizen of the Dominican Republic, she intends to remain here and to become a United States citizen. When petitioner's husband abandoned her, she had the right to establish her own domicile (*Vanderbilt* v. *Vanderbilt*, 1 N Y 2d 342, 351, affd. 354 U. S. 416), and under traditional rules, she has become a domiciliary of New York. Her Dominican citizenship is no bar to establishing a New York domicile. (17 N. Y. Jur., Domicil and Residence, §§ 2, 3, 30.) The trial court found that the petitioner is a domiciliary here and we approve that finding.

Under the circumstances and with due regard to the rights of the petitioner and the child as domiciliaries of the State, the courts here "'are under no constitutional compulsion to give full faith and credit'" to the divorce decree rendered by the court of the Dominican Republic. (*Schoenbrod* v. *Siegler*, 20 N Y 2d 403, 408, citing cases.) Frequently, we do give effect to a foreign country judgment "'as a matter of comity'" (*Schoenbrod* v. *Siegler, supra*; *Rosenstiel* v. *Rosenstiel*, 16 N Y 2d 64, 74), but recognition of such a decree will be denied where the decree or the effect thereof contravenes the public policy of this State (*Rosenbaum* v. *Rosenbaum*, 309 N. Y. 371, 375).

Generally, the public policy of a State is to be determined in light of its laws "whether found in the Constitution, the statutes or judicial records". (See *People* v. *Hawkins*, 157 N. Y. 1, 12; *Glaser* v. *Glaser*, 276 N. Y. 296, 302.) The matter of the determination of our policy with respect to the effect to be given a foreign country judgment is vested with the Legislature and courts of the State. (See *Borax' Estate* v. *Commissioner of Internal Revenue*, 349 F. 2d 666, 670, cert. den. 383 U. S. 935; *Glaser* v. *Glaser, supra*, p. 301.) In the absence of a statutory provision or judicial precedent directly laying down our policy applicable to the circumstances of a particular case, we must look for guidance to the general spirit and purpose of our laws and the trend of our judicial decisions.

The policy to be adopted under the circumstances here is clearly revealed in our laws and decisions. Initially, we note

that the decisions of courts of this State, for the benefit and welfare of its domiciliaries, have repeatedly refused to accord validity to an ex parte divorce decree rendered in a foreign country which lacked substantial contacts with the parties and the marital *res* (see, for example, *Caldwell* v. *Caldwell,* 298 N. Y. 146; *Rosenbaum* v. *Rosenbaum, supra; Vose* v. *Vose,* 280 N. Y. 779; *Querze* v. *Querze,* 290 N. Y. 13).

The decision of *Rosenstiel* v. *Rosenstiel (supra)* does not apply to require that recognition be given to this particular Dominican Republic divorce decree. In *Rosenstiel,* the parties had voluntarily submitted themselves to the jurisdiction of the foreign court. The court held that recognition was " to be given by New York to a matrimonial judgment of a foreign country based on grounds not accepted in New York, where personal jurisdiction of one party to the marriage has been acquired by physical presence before the foreign court; and jurisdiction of the other has been acquired by appearance and pleading through an authorized attorney although no domicile of either party is shown within that jurisdiction; and ' residence ' has been acquired by one party through a statutory formality based on brief contact." (See *Rosenstiel* v. *Rosenstiel,* 16 N Y 2d 64, 71, *supra.*) Here, however, neither of the spouses personally appeared before the foreign court, and in personam jurisdiction was not acquired over the defendant (petitioner here) in the foreign action.

In any event, in determining the policy to be followed here, we note that under the settled law of this State, the ex parte Dominican Republic decree does not affect the rights of the petitioner and her child to receive support from the appellant. Where a foreign court entertains a divorce action by a husband without acquiring in personam jurisdiction over the defendant wife, the decree rendered in the action will not be effective to cut off the obligation of the husband to support his wife. (See *Estin* v. *Estin,* 296 N. Y. 308, affd. 334 U. S. 541; *Kreiger* v. *Kreiger,* 297 N. Y. 530, affd. 334 U. S. 555.) Where, as here, the foreign court failed to acquire such jurisdiction, the court was " as powerless to cut off the wife's support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction." (*Vanderbilt* v. *Vanderbilt,* 354 U. S. 416, 419.)

Incidentally, the policy of this State is also manifested by the enactment of the laws which provide that the right of a wife and children to support may be enforced in a matrimonial action following an ex parte foreign divorce. (See Domestic

Relations Law, §§ 236, 240; *Vazquez* v. *Vazquez*, 26 A D 2d 701.) Also, in furtherance of our public policy, it is noted that by Family Court Act (§ 466, subd. [c]) jurisdiction is expressly conferred upon the Family Court "to entertain applications to enforce and modify the alimony and support provisions of foreign decrees irrespective of the grounds upon which the decrees are granted." (*Matter of Seitz* v. *Drogheo*, 21 N Y 2d 181, 185.)

Of course, it may be argued that, irrespective of the inefficacy of the foreign country decree to cut off the appellant's obligation to support his wife and child, the decree should be recognized as effectively dissolving the marriage and that thereby the Family Court would be deprived of jurisdiction,[1] relegating the wife to her other remedies, if any. But, certainly, the court was not bound to give the decree such recognition for the purpose of declining jurisdiction, particularly where strong policy reasons, grounded on the contacts of the parties with this State and based on our law, dictate a denial of such recognition.

The interests of this State in the parties and in the marital *res* were such as to justify the rejection of the divorce decree. Although the parties were married here in the consulate offices of the Dominican Republic, their marital home was established and remained in New York. The issue of their marriage was born here. The family relationship, in its existence here, was accorded the benefit of and remained subject to our laws. In a real sense, the marital *res* was, at all times, located in New York. Furthermore, the personal interests and material affairs of the parties were and are located in this State. Although the appellant insists that it is his intention to return to the Dominican Republic, he has remained here since 1962. His residence, his employment and his personal and family interests, including an alleged newly acquired marital relationship[2] with a second wife, were located here at the time of the rendition of the decree. Except for his continued Dominican citizenship, he does not claim any present contacts with that country and he did not even personally return there to prosecute the divorce proceedings.

1. It has been held that the jurisdiction of the Family Court to award support to a wife is dependent on the existence of a valid marriage. (See *Matter of Carter* v. *Carter*, 19 A D 2d 513.) But, in any event, it is noted that the wife is caring for this small child and the power of the court, conferred by subdivision (c) of section 466 of the Family Court Act aforesaid, would apparently include the right to modify the foreign decree to include provision for her support as incident to the provisions therein for support of the child.

2. The appellant testified that he has married a second time.

We conclude that the Family Court properly assumed jurisdiction to render the support order. Otherwise, the petitioner and the child, without adequate means of support, will be required to be supported at the expense of the public. Of course, as an alternative, the petitioner could bring the formal matrimonial action in Supreme Court to enforce the support obligation of the appellant (Domestic Relations Law, §§ 236, 240), but the matter is before the court now and no good reason is advanced for remitting her to the delay and expense of another proceeding. Moreover, it appears that the petitioner is caring for the child and that they are now actually receiving public assistance from the City of New York, which fact, alone, endows New York with a strong policy interest in a rejection of the ex parte decree limiting the obligations of the appellant.

The order of the Family Court, dated December 14, 1966, should be affirmed, without costs and disbursements.

TILZER, NUNEZ and MACKEN, JJ., concur; RABIN, J., deceased.

Order entered on or about December 14, 1966, affirmed, without costs and without disbursements.

