Hugh R. Elwyn, J.
The petitioner brings this proceeding pursuant to article 4 of the Family Court Act to enforce her husband’s duty of support (Family Ct Act, § 412). The parties were married at Springfield, Massachusetts on September 4, 1948, but ceased to live together sometime in 1965. There are no children of the marriage. On October 3, 1972 the respondent obtained a Nevada divorce, and has since remarried.
*735 The respondent seeks a dismissal of the proceeding upon the ground that the judgment and decree of divorce which he obtained in the courts of the State of Nevada has effectively dissolved the marriage; that the decree is entitled to be accorded full faith and credit by the courts of New York (US Const, art IV, § 1; Williams v North Carolina, 317 US 287) and that since the petitioner no longer has the status of a lawful wife she may not maintain this proceeding (Martin v Martin, 58 Misc 2d 459, 461).
"It is [of course] fundamental that the obligation of a husband to support his wife must be based upon a valid marriage. (Family Ct Act, § 412; Matter of Carter v Carter, 19 AD2d 513.) Thus, jurisdiction of the court in a support proceeding brought by a former wife is always subject to attack on the ground that a valid divorce exists between the parties (Matter of Carter v Carter, supra.)” (Matter of Aletha Butts "MM" v Donald Melvin "MM", 39 AD2d 995.)
"The Family Court as an incident to the exercise of its jurisdiction may deny full faith and credit to an ex parte foreign divorce decree if it finds that a bona fide domicile was not established in a foreign jurisdiction. (Williams v North Carolina, 325 US 226; Wilkov v Wilkov, 13 AD2d 471; Sierra v Sierra, 8 AD2d 708; Loomis v Loomis, 288 NY 222.)” (Matter of Carter v Carter, 19 AD2d 513: see, also, Erdt v Erdt, 77 Misc 2d 236, 238.)
"There is a presumption of validity of a foreign divorce decree, and the burden is upon the person who attacks it to establish that such decree is invalid.” (Matter of Carter v Carter, supra.) "The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant.” (Williams v North Carolina, 325 US 226, 233-234.)
The petitioner attacks the validity of the Nevada divorce decree upon two grounds: (1) invalidity of the manner of the service of process upon her in the State of New York and (2) the bona ñdes of the respondent’s domicile in Nevada.
With respect to the first ground, the petitioner contends that she was not personally served with the summons issued by the Nevada court, but that the process server after gaining admittance to the residence in Plattsburgh, New York where she was temporarily sojourning, asked if she were Marilyn Gardner to which she made no reply; whereupon, he threw the paper on a table and it fell to the floor. It is not clear whether the petitioner ever actually read the summons from *736 the Nevada court, but it does appear that she had some knowledge of the institution of the divorce proceeding for she acknowledges that after the incident she consulted at least four lawyers with reference to contesting the divorce, all of whom advised her not to contest it.
Attached to the summons as a part of the judgment roll in the Nevada divorce proceedings is an affidavit of service showing personal service of the summons and complaint on Marilyn Ruth Gardner at Plattsburgh, New York, on September 11, 1972. There is, of course, a general presumption of regularity attaching to judicial proceedings, but even if the petitioner’s version of the manner of service be accepted as accurate, the manner of service of the summons, while perhaps irregular, is not invalid so as to vitiate the entire proceeding (CPLR 308; McDonald v Ames Supply Co., 22 NY2d 111, 115; Schenkman v Schenkman, 206 Misc 660, affd 284 App Div 1068; Levine v National Transp. Co., 204 Misc 202, affd 282 App Div 720; Matter of Barbara, 7 AD2d 340; Buscher v Ehrich, 12 AD2d 887; Chernick v Rodriquez, 2 Misc 2d 891; Green v Morningside Hgts. Housing Corp., 13 Misc 2d 124, 125, affd 7 AD2d 708; cf. Miller v Alda Corp., 53 Misc 2d 279). There was in this case a sufficient personal delivery of the summons to comply with CPLR 308.
With respect to the second ground, i.e., the bona ñdes of the respondent’s Nevada domicile, the respondent’s uncontroverted testimony is that he left New York State on July 4, 1972, to go to Nevada to seek employment because he had been laid off due to lack of work. He gave up the apartment which he had, closed out his checking account and went to his local union, got clearance and informed them that he was moving to the west coast. Upon arriving in the west he stopped at Reno, Nevada and checked in with the local union hall. He was, however, unable to find work as a crane operator in either Nevada or California, so he took a temporary job in a Gulf service station. While in Nevada he rented an apartment, opened a checking account, gave up his New York State operator’s license and got both operator’s license and registration for his car in the State of Nevada. He also registered to vote and actually voted in the 1972 presidential election in Nevada by absentee ballot, having returned to New York State prior to election day. When he lost his job in the gas station he traveled to California in search of work, but, having no success there, returned to Nevada and finally, due *737 to his inability to find work in Nevada, in October of 1972 returned to New York. The respondent testified that when he left New York it was with the intention of living on the west coast permanently and that he intended to establish his domicile in Nevada.
In my opinion, the uncontroverted evidence in this case establishes that the respondent genuinely intended to make Nevada his home when he went there for the purpose of seeking employment, having been laid off from his job due to lack of work. I find that he was domiciled in Nevada when he obtained the divorce from the petitioner; that the petitioner has not met her burden of undermining its validity and that consequently the Nevada divorce must be given full faith and credit in this State (Williams v North Carolina, 317 US 287, supra; Williams v North Carolina, 325 US 226, supra; Estin v Estin, 296 NY 308, affd 334 US 541; see, also, Chenu v Board of Trustees of Police Pension Fund of City of NY, 12 AD2d 422, 424; Maray v Maray, 35 AD2d 603; 1 Foster & Freed, Law and the Family, § 9.8).
Although the decree must therefore be recognized as effectively dissolving the marriage, the Family Court is not thereby deprived of jurisdiction to afford relief to the wife. The Nevada divorce decree recites and an affidavit of service shows that the wife was served with the summons at Plattsburgh, New York. Since the wife did not appear in the action, the Nevada divorce decree was rendered without that court ever having acquired in personam jurisdiction over her. That being the case, the seemingly paradoxical doctrine of "divisible divorce” becomes operative to preserve for the wife the economic benefits of the marriage (see Estin v Estin, 296 NY 308, affd 334 US 541, supra; Kreiger v Kreiger, 297 NY 530, affd 334 US 555; Barber v Barber, 21 How. [62 US] 582; cf. Lynn v Lynn, 302 NY 193, cert den 342 US 849).
Precisely in point is De Pena v De Pena (31 AD2d 415, 418) wherein the Appellate Division (1st Dept) in a proceeding for support in the Family Court wherein the respondent sought to escape liability for the support of his wife by virtue of a Dominican Republic divorce decree said: "Where a foreign court entertains a divorce action by a husband without acquiring in personam jurisdiction over the defendant wife, the decree rendered in the action will not be effective to cut off the obligations of the husband to support his wife. (See Estin v Estin, 296 NY 308, affd 334 US 541; Kreiger v Kreiger, 297 *738 NY 530, affd 334 US 555.) Where, as here, the foreign court failed to acquire such jurisdiction, the court was "as powerless to cut off the wife’s support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court’s 'jurisdiction’ (Vanderbilt v Vanderbilt, 354 US 416, 419).”
In Estin v Estin (supra) and Kreiger v Kreiger (supra), the wife had procured a prior judgment of separation awarding her permanent alimony, the right to which was not cut off by a subsequent Nevada divorce decree without the court’s having obtained personal jurisdiction over the wife. A similar result obtains where the wife has obtained a prior Family Court support order. The wife’s right to support is unaffected by a foreign divorce decree obtained by the husband without personal jurisdiction over the wife (Matter of Eldredge v Eldredge, 27 AD2d 475; Matter of Slemons v Slemons, 28 AD2d 634).
It is not, however, necessary for the economic benefits of the marriage to be preserved for the wife that she first obtain either a judgment for alimony or a Family Court support order. A State may validly grant alimony after and in spite of a foreign, ex parte divorce (Armstrong v Armstrong, 350 US 568; Vanderbilt v Vanderbilt, 1 NY2d 342, 250, affd 354 US 416).
The result is, as stated by the Court of Appeals in Vanderbilt v Vanderbilt (supra, p 351) "that part of a foreign (non-personal service but otherwise jurisdictionally valid) divorce decree which dealt with status had to be given effect in New York terminating the marriage but was entitled to no effect at all so far as support or other property rights were concerned. The question is not whether the economic liabilities of a marriage can validly be held to survive a valid divorce. The point is that the divorce obtained by defendant was valid as to status only, but not as to property. The holding that such a divorce judgment was not effective as to property meant necessarily that the one who obtained it could claim no protection from it as to property.”
The power of the court to award the wife alimony after the husband had obtained a foreign divorce in which personal jurisdiction over the wife had not been obtained was in Vanderbilt predicated upon the enactment of section 1170-b of the former Civil Practice Act. A similar grant of authority to *739 award alimony to the wife, as justice may require, notwithstanding that the court refuses to grant the relief requested by the wife by reason of a foreign divorce decree granted to the husband in which personal jurisdiction over the wife was not obtained is contained in section 236 of the Domestic Relations Law.
While the language of section 236 technically renders it applicable only to an action brought "for annulment, separation or divorce”, it has been held by the Court of Appeals that the section determines the public policy of the State and that it applies to proceedings in the Family Court under section 412 of the Family Court Act (Matter of Steinberg v Steinberg, 18 NY2d 492).
Thus while the court is compelled to recognize the Nevada divorce decree as valid to dissolve the marriage, the petitioner’s right to support under section 412 of the Family Court Act remains unaffected thereby. In spite of her lack of status as a wife, she may still maintain this proceeding for support. The Clerk of the court is directed to reschedule the matter for further proceedings upon due notice to both parties for the purpose of receiving such proof as the parties may be advised to present with respect to the wife’s financial needs and the husband’s ability to respond thereto. (Family Ct Act, § 412.)