GERALDA F. BROWNE, Respondent, v JAMES S. BROWNE, Appellant.

Fourth Department, July 2, 1976

*Scinta, Rinaldo & Sandler (Thomas Rinaldo* of counsel), for appellant.

*Carnahan, DiGulio, Moriarty & Hill (Robert Moriarty* of counsel), for respondent.

DILLON, J. Though married in 1953 in the State of Mississippi, both parties were lifelong residents of New York until October, 1973 when defendant went to the State of Texas, where he remains. Plaintiff first instituted an action for divorce in December, 1973 by personally serving defendant with process in the State of Texas. Additional preliminary proceedings, not relevant to the issues here, were had in that action. In June, 1974 defendant commenced a divorce action in the State of Texas.

Following the enactment of CPLR 302 (subd [b]), plaintiff commenced another divorce action in November, 1974, again serving process upon the defendant in Texas. In the latter suit plaintiff alleges causes founded upon cruel and inhuman treatment, adultery and abandonment, and asserts in personam jurisdiction over the defendant pursuant to CPLR 302 (subd [b]). She seeks a judgment awarding her alimony, and custody and support of the children of the marriage.

Plaintiff later moved to enjoin the defendant from proceeding with his action in Texas and, at the same time, sought temporary counsel fees. Defendant cross-moved to dismiss so much of plaintiff's action as sought in personam relief. It is from the order granting plaintiff's motion, with a concurrent denial of defendant's motion, that defendant appeals.

At the threshold of this dispute is defendant's claim that

CPLR 302 (subd [b]) is unconstitutional as violative of due process in that it subjects a nonresident, nondomiciliary to in personam jurisdiction in a matrimonial action without personal service in this State. The section provides: "(b) Personal jurisdiction over non-resident defendant. A court in any matrimonial action or family court proceeding involving a demand for support or alimony may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state, or over his or her executor or administrator, if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the obligation to pay support or alimony accrued under the laws of this state or under an agreement executed in this state."

Beyond the strong presumption of constitutionality which cloaks a legislative enactment and the established principle that only as a last resort will courts strike down a statute on constitutional grounds (*I.L.F.Y. Co. v Temporary State Housing Rent Comm.,* 10 NY2d 263, 269, app dsmd 369 US 795), we find that the public policy to be served (see Blumenthal Memorandum, NY Legis Ann, 1974, p 41) justified the enactment of CPLR 302 (subd [b]), and its provisions adhere to due process requirements for achieving in personam jurisdiction (see McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, C302:27, supp 1975–1976, pp 16–17).

To pass constitutional muster, the statute must meet the test established in *International Shoe Co. v Washington* (326 US 310, 316): "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Millikin v Meyer,* 311 U.S. 457, 463."

In enunciating a "minimum contacts" standard, the Supreme Court acknowledged the need of a State, in some circumstances, to extend in personam jurisdiction over persons not present within its borders (see *Doherty & Co. v Goodman,* 294 US 623; *Hess v Pawloski,* 274 US 352), thereby modifying the long-accepted constitutional jurisdictional requirement of service within the State (see *Pennoyer v Neff,* 95 US 714). Thus it was that Justice BLACK, in interpret-

ing the due process standard of *International Shoe Co. v Washington (supra)* and in evaluating jurisdictional due process precedents, wrote for the court: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *(McGee v International Life Ins. Co.,* 355 US 220, 222.)

The defendant was served with process in the State of Texas. The statute under attack permits personal jurisdiction over a nonresident defendant in such a matrimonial action, provided that the parties and the marital history satisfy the statutory qualifications. The facts which must be established are clear and well defined and, if shown, justify "limited incursions into territory heretofore regarded as in personam" (McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, C302:27, supp 1975-1976, p 16).

No attempt is made in the statute to ensnare one in whom the State has not had a legitimate and proper concern. We have here a marriage of more than 20 years' duration. The parties were lifelong residents of New York until the defendant left for Texas in late 1973. Plaintiff and three children born of the union continue to reside here. In such circumstances, the marriage of these parties has roots deeply embedded in New York. The State's abiding interest in those of the family unit who remain as domiciliaries should not be cut off because a marital partner, for whatever reason, prefers another climate.

While we recognize that in particular circumstances the application of CPLR 302 (subd [b]) may well present constitutional problems (see *Renaudin v Renaudin,* 37 AD2d 183; *Baum v Baum,* 62 Misc 2d 305), surely it cannot be said here that defendant's contacts with New York have been such that the action against him "offend[s] traditional notions of fair play and substantial justice". (See *Millner Co. v Noudar, Lda.,* 24 AD2d 326.) To the contrary, to permit the defendant to circumvent obligations which had accrued during his long association with this State would be repugnant to a rational concept of justice. We find, therefore, that the statute as drafted, and as applied here, satisfies the mandate of constitutional due process.

Having achieved personal jurisdiction over the defendant, plaintiff may proceed not only on the merits of the matrimonial action, but also upon her demands for alimony, counsel

fees, and custody and support for the children of the marriage (Domestic Relations Law, §§ 236, 237, 240). A more troublesome issue arises, however, as to whether a New York court, in the circumstances here, should enjoin the defendant from prosecuting his Texas divorce action. Sound public policy dictates that, when possible, multiplicity of suits should be avoided (see *Schuehle v Reiman,* 86 NY 270).

Plaintiff alleges by affidavit that when defendant left New York, he told her that "he was going to Texas because it is a 'no-alimony state' and 'he just wasn't going to have to pay alimony.'" While defendant may reside wherever he chooses, we note that plaintiff's allegation is not denied in the record.

Nonetheless, even assuming that defendant has established a Texas domicile, it is significant that the relief he seeks in his Texas suit is dissolution of the marriage, precisely the same relief sought by plaintiff in New York. While we recognize that a judgment of divorce in the Texas court may be entitled to full faith and credit in this State *(Williams v North Carolina,* 317 US 287), any attempt by the foreign State to adversely affect the rights of plaintiff to alimony and to custody and support for the children, will not be entitled to comity and will be ineffectual *(Vanderbilt v Vanderbilt,* 1 NY2d 342).

The doctrine of "divisible divorce" is firmly established in New York law *(Estin v Estin,* 296 NY 308, affd 334 US 541); "a divorce decree may be completely effective to dissolve a marriage and yet completely ineffectual to alter certain legal and economic incidents of that marriage" *(Lynn v Lynn,* 302 NY 193, 201, cert den 342 US 849). We cannot agree with defendant's claim, however, that since a Texas divorce will affect none of plaintiff's marital rights other than the marital *res,* she does not meet the test of CPLR 6301. A judgment of divorce in favor of defendant in Texas will clearly violate "plaintiff's rights respecting the subject of the action" and will tend to render her New York judgment "ineffectual" (CPLR 6301). Indeed, such a Texas decree, if procured before disposition of this New York case, could result in the dismissal of so much of plaintiff's action as seeks a divorce (see *Faulk v Faulk,* 21 AD2d 967).

In dealing with a similar defense claim in opposition to the issuance of an injunction in a matrimonial action, former Chief Judge DESMOND, writing for a unanimous court, noted that the defendant should get no "comfort" from the language

of section 878 of the Civil Practice Act (predecessor to CPLR 6301) "since the language authorizes an injunction in just such a situation as this" *(Garvin v Garvin,* 302 NY 96, 103). The later decision in *Vanderbilt v Vanderbilt (supra)* renders those words no less applicable to the matter before us.

We acknowledge that plaintiff has not, in any way, asserted or argued that defendant's Texas residence or domicile is a sham or a fraud (see *Garvin v Garvin, supra).* Nor are we unaware of the reluctance of our courts to enjoin the prosecution of a divorce action in a sister State where a spouse has acquired a bona fide domicile in that State *(Hammer v Hammer,* 278 App Div 396, 399).

This is not a case, however, where the plaintiff has not acquired personal jurisdiction over the defendant or where it was first necessary to institute a plenary action for permanent injunction (see *Siev v Siev,* 34 AD2d 1001); or where the foreign State served throughout the marriage as the home of record of the parties and the plaintiff is using our courts to "strengthen her money demands at the bargaining table" (see *Rosenstiel v Rosenstiel,* 15 AD2d 880).

This is a marriage in which New York courts have a vital interest. To enjoin the defendant from proceeding with his Texas action works no great hardship upon him. Since the foreign decree will affect only the marital status, it would be duplicitous to allow him to pursue in Texas the same goal he may affirmatively achieve here in response to plaintiff's suit.

Divorce has not become so common or so widely accepted as to render unimportant the issue as to which party shall be entitled to the relief. Defendant seeks to compel plaintiff, who appears to be without funds, either to protect this right in Texas or to forfeit. We shall not impose such harsh alternatives, particularly where, as here, defendant has the economic stability to protect his right in New York.

We conclude, therefore, in the interests of justice, that Special Term properly exercised its discretion in granting plaintiff's motion for injunctive relief.

In view of the demands and complexities of this case and the relative circumstances of the parties, we find no basis for disturbing Special Term's award of counsel fees to plaintiff.

The order should be affirmed.

MARSH, P. J., CARDAMONE, MAHONEY and GOLDMAN, JJ., concur.

Order unanimously affirmed, with costs.