JEAN PAPARELLA, Appellant, v JEROME A. PAPARELLA, Respondent.

Fourth Department, April 8, 1980

### APPEARANCES OF COUNSEL

*Stephen B. Hughes* for appellant.

*Morris & Morris (Richard Morris* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

We hold that personal jurisdiction over defendant was prop-

erly acquired pursuant to CPLR 302 (subd [b]). The necessary New York contacts to support that determination are the strong interest this State has in the outcome because of the long period during which New York had been the parties' marital domicile, their relatively recent departure from the State and the short time plaintiff lived without it, the contacts the parties retained in New York during their absence and the fact that they lived in three different jurisdictions for brief periods after leaving New York. These facts afford a sufficient basis here to support New York's exercise of in personam jurisdiction although the parties' contacts within New York in other similar cases may be so attenuated that a finding that personal jurisdiction existed would violate due process principles (see *Kulko v California Superior Ct.,* 436 US 84; *Lieb v Lieb,* 53 AD2d 67).

MOULE, J. (concurring). While I agree with the result reached by my colleagues, I wish to express my views more fully.

The parties to this action were married in Philadelphia on June 25, 1949. In September of the same year, they came to Batavia, New York where they resided continuously until September 1975. At that time they moved to their Florida cooperative apartment, apparently in hopes that the climate would be conducive to defendant's recuperation from a series of heart attacks. In November of 1975, plaintiff returned to Batavia. Defendant followed her to Batavia in December of 1975, but stayed there for only two months before returning to Florida. According to plaintiff, defendant, a medical doctor, resumed his practice during this brief interval in Batavia. According to defendant, however, the visit was made only for the purpose of closing his office and winding up his affairs. Plaintiff apparently did not rejoin defendant at the Florida cooperative until April.

From April, 1976 until June, 1977 the parties resided continuously in Florida. During this period, the parties sold their marital home in Batavia. The record reveals that at this time defendant was looking for a new job which would not make as harsh demands on his health as had private practice. Defendant nearly accepted a position on the staff of the Buffalo General Hospital but later changed his mind. Defendant did accept a position with the University of Georgia in Athens, Georgia, but quit that job after one day. Finally, in early 1977, defendant took a pharmaceutical research position in Summit,

New Jersey where the parties moved in June of that year. However, defendant again became dissatisfied and quit the research job, returning to Florida in October, 1977 at which time plaintiff, unhappy with the relationship, returned to Batavia.

Plaintiff commenced this action for divorce and alimony by service upon defendant in Florida on November 1, 1978. Defendant responded by moving to dismiss that part of the action requesting alimony, counsel fees or any other relief requiring personal jurisdiction over defendant, contending that, since New York was not the last matrimonial domicile of the parties before their separation, long-arm jurisdiction under CPLR 302 (subd [b]) was not available to plaintiff. Plaintiff alleged in response that she had never had an intention to abandon New York as her domicile or to establish a domicile anywhere else.

Special Term granted defendant's motion to dismiss, finding that New Jersey was the matrimonial domicile of the parties just prior to their separation. The court read CPLR 302 (subd [b]) as conferring personal jurisdiction upon New York only where that State is the last matrimonial domicile of the parties before their separation, and concluded that jurisdiction was unavailable under the circumstances presented since the parties had resided as a couple in two other States since they had left New York. It is from the order dismissing that part of the complaint requiring personal jurisdiction over defendant that plaintiff appeals.

Special Term erred in finding that New Jersey was the last matrimonial domicile of the parties prior to their separation. For the parties to have made their matrimonial domicile in that State, they must have lived together there as husband and wife with the intention of making it their fixed and permanent home (19 Carmody-Wait 2d, NY Prac, § 114:16, p 38; see, also, *De Meli v De Meli,* 120 NY 485; *Ruderman v Ruderman,* 193 Misc 85, 87, affd 275 App Div 834). The record indicates that the move from Florida to New Jersey was a tentative one, made with the avowed intention of finding out whether the colder climate would adversely affect defendant's health. That the sojourn in New Jersey was in the nature of an experiment is underscored by the brevity of the parties' four-month stay there, as well as by the fact that both parties maintained bank accounts in New York during that period. Additionally, plaintiff maintained many of her social ties with

Batavia during this period, including membership in her church and other organizations. Clearly, the parties did not have the type of firm intention to make New Jersey their permanent home which would be required to consider that State the matrimonial domicile in October, 1977, when the parties separated.

Nor can Florida be considered the last matrimonial domicile of the parties before their separation. Once a domicile has been established, it continues as such until there has been: (1) an actual change of residence; (2) an absolute and fixed intention of abandoning the former domicile; and (3) an absolute and fixed intention of acquiring the new domicile (*Matter of Newcomb,* 192 NY 238; *Ruderman v Ruderman,* 193 Misc 85, affd 275 App Div 834, *supra;* Restatement, Conflict of Laws 2d, §§ 15 [comment C], 16, 18, 19; 17 NY Jur, Domicil and Residence, §§ 11-13). The second and third requirements above have not been met here.

There is inadequate evidence that the parties maintained an absolute and fixed intention of abandoning New York as their domicile or of making Florida their new one. Rather, the record shows that the decision to move to the Florida cooperative in September, 1975 was a temporary one based upon defendant's need for a mild climate at the time, but subject to change if circumstances so dictated. During the stay in Florida, defendant did not confine his job search to that State. He came so close to taking a job in Buffalo, New York that he had his wife put a deposit down on a house there. Moreover, he did take a position, albeit short-lived, in Athens, Georgia and, finally, in Summit, New Jersey. All indications point to Florida having been a temporary base, convenient because the parties already had a vacation home there and because the climate was conducive to defendant's recovery from his three heart attacks, but in no way intended to become a permanent abode.

Defendant points to a number of factors which assertedly demonstrate an intention to transfer the parties' domicile from New York to Florida. Plaintiff apparently registered to vote in Florida in August, 1976. In the following year, the parties applied for a Florida homestead exemption and filed a personal property tax return in Florida and a nonresident tax return in New York. Finally, in 1977, the parties sold their New York home. These circumstances, however, do not alone or cumulatively signify a clear intent to shift domicile. Regis-

tering to vote in a particular State, especially for only one year, does not create a domicile in that State *(Matter of Limburg v Snyder,* 253 App Div 844, affd 277 NY 725; see, also, 17 NY Jur, Domicil and Residence, § 57). Similarly, the filing of tax returns is not considered determinative of the issue of domicile *(Matter of Brunner,* 41 NY2d 917). Such an action is usually more of an indication of a desire to gain a financial advantage than it is of where an individual intends to make his permanent home. As such, it is of little help in resolving the question of domicile (see 17 NY Jur, Domicil and Residence, § 59). Finally, the parties' sale of their Batavia residence, though some evidence that they intended to abandon their New York domicile, is not conclusive, since there is no accompanying evidence of intent to make Florida the parties' permanent abode (see 25 Am Jur 2d, Domicil, §§ 18, 24-26). Defendant having failed to sustain his burden of proving that the matrimonial domicile of the parties ever shifted to Florida or New Jersey, I must conclude that it remained in New York, where the parties had made their home together for over 25 years (see *Matter of Limburg v Snyder, supra).* New York having been the matrimonial domicile of the parties prior to their separation, the courts of this State may exercise personal jurisdiction over defendant pursuant to CPLR 302 (subd [b]) and Special Term erred in holding otherwise. I would not, however, rely on this basis alone.

Under the circumstances of this case, it would be proper to subject defendant to the personal jurisdiction of the courts of New York even had this State not been the last matrimonial domicile of the parties prior to their separation. CPLR 302 (subd [b]) provides: "[A] court in any matrimonial action or family court proceeding involving a demand for support or alimony may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state, or over his or her executor or administrator, if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the obligation to pay support or alimony accrued under the laws of this state or under an agreement executed in this state." The provision of CPLR 302 (subd [b]), which is relevant to this case, is that provision conferring jurisdiction where the plaintiff is a resi-

dent of New York and "this state was the matrimonial domicile of the parties before their separation." The question before us is whether this language requires that New York have been the last matrimonial domicile of the parties before their separation, or whether it is adequate that the parties have been domiciled together in New York at some point less proximate to the time of separation.

The Second Department was confronted by the same question in *Lieb v Lieb* (53 AD2d 67). The parties in *Lieb* had married in New York and resided here until 1957, at which time they moved to Virginia. In 1969 the defendant abandoned the plaintiff, and the latter returned to New York where, after two years' residence, she commenced an action for support. The court interpreted "before their separation" in CPLR 302 (subd [b]) as being subject to an implicit limitation of "at least within the recent past" (53 AD2d, at p 72). Since the parties had not lived together in New York for at least 12 years prior to their separation, the court found that New York did not have personal jurisdiction over defendant.

Unlike the situation in *Lieb,* we have here an interval of, at most, a little over two years between the time the parties lived together in New York and the time of their separation. Though this brief interval might very well satisfy CPLR 302 (subd [b]), even if interpreted to require that New York was the matrimonial domicile of the parties "within the recent past" before their separation, I would not rest our holding on the vagaries of such an interpretation. Instead, I read the pertinent provision of CPLR 302 (subd [b]) as permitting New York to take personal jurisdiction when the parties have made their matrimonial domicile in this State at some time before their separation providing the plaintiff is a resident of New York at the time of the action, subject to constitutional due process limitations. Such a reading of CPLR 302 (subd [b]) complies with the most basic principles of statutory construction. The language of the statute itself requires only that this State have been the matrimonial domicile of the parties "before their separation", with no temporal refinement placed upon that requirement. Courts should not add restrictions or limitations to the wording of a statute where none exist *(Matter of Erie County Agric. Soc. v Cluchey,* 40 NY2d 194, 200; see, also, McKinney's Cons Laws of NY, Statutes, Book 1, §§ 94, 114).

Constitutional due process requires that in order to subject

a defendant not personally within the forum State to personal jurisdiction, he must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " (*International Shoe Co. v Washington,* 326 US 310, 316). Here, no attempt is made "to ensnare one in whom the State has not had a legitimate and proper concern" (*Browne v Browne,* 53 AD2d 134, 137). The parties made their marital home here for over 26 years. All of their children were born and raised in New York State. Defendant practiced medicine in Batavia, New York for 21 years. Plaintiff has, after a brief absence, returned to this State seeking to avail herself of the rights which have accrued under a relationship which has had by far stronger ties with New York than with any other forum. Under similar circumstances, in *Browne v Browne* (*supra,* p 137), this court stated in an opinion by DILLON, J.:

"The State's abiding interest in those of the family unit who remain as domiciliaries should not be cut off because a marital partner, for whatever reason, prefers another climate.

"While we recognize that in particular circumstances the application of CPLR 302 (subd [b]) may well present constitutional problems (see *Renaudin v Renaudin,* 37 AD2d 183; *Baum v Baum,* 62 Misc 2d 305), surely it cannot be said here that defendant's contacts with New York have been such that the action against him 'offend[s] traditional notions of fair play and substantial justice'. (See *Millner Co. v Noudar, Lda.,* 24 AD2d 326.) To the contrary, to permit the defendant to circumvent obligations which had accrued during his long association with this State would be repugnant to a rational concept of justice." As in *Browne,* the application of CPLR 302 (subd [b]) here satisfies the mandate of constitutional due process. (See, also, *Dillon v Dillon,* 46 Wis 2d 659; *Hines v Clendenning,* 465 P2d 460 [Okla]; *Farah v Farah,* 25 Ill App 3d 481; cf. *Kulko v California Superior Ct.,* 436 US 84.)

An examination of the legislative history of CPLR 302 (subd [b]) supports an expansive reading of the jurisdictional grant therein. The Blumenthal memorandum (NY Legis Ann, 1974, pp 41-42), in support of the bill which eventually became CPLR 302 (subd [b]), cited the serious problem of single parent families forced to depend upon public support because the wage-earner spouse was beyond the personal jurisdiction of New York courts. The Memorandum noted with approval that "a variety of state court opinions have held that personal

jurisdiction may be granted based on a reasonable concern for the family's welfare provided that 'there are certain minimum contacts and traditional notions of fair play and substantial justice are not violated.'" Further, it is significant that the Legislature has rejected a recent proposal to amend CPLR 302 (subd [b]). The proposed amendment would have changed "provided that this state was the matrimonial domicile of the parties before their separation" to read "provided that this state was the *last* matrimonial domicile of the parties before their separation." That the Legislature saw fit to continue the original language of the statute when presented with an opportunity to qualify that language is a strong argument against attempting to limit the reach of CPLR 302 (subd [b]) through judicial construction (see L 1979, ch 252).

Finally, I would note that at least 12 other States have matrimonial long-arm statutes designed to obtain personal jurisdiction over defendants who have removed themselves from the forum.[1] Moreover, some of these statutes permit the exercise of personal jurisdiction in a broader range of circumstances than would my reading of CPLR 302 (subd [b]). In Florida, for example, with respect to proceedings for alimony, child support or division of property in connection with an action to dissolve a marriage, personal jurisdiction may be obtained over any defendant who "resided in [the] state preceding the commencement of the action, whether cohabiting during that time or not." (Fla Stat Ann, § 48.193, subd [1], par [e] [1979].) Similarly, Oklahoma courts may assert long-arm jurisdiction as to any cause of action arising from a defendant "maintaining any other relation to this state or to persons or property * * * which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitu-

---

1. These States are as follows:

| (1) Florida | (Fla Stat Ann, § 48.193, subd [1], par [e]) |
| (2) Idaho | (Idaho Code, § 5-514, subd [e]) |
| (3) Illinois | (Ill Rev Stat, ch 110, § 17, subd [1], par [e]) |
| (4) Indiana | (Ind Trial Rule 4.4, subd [A], par [7]) |
| (5) Kansas | (Kan Code Civ Pro, § 60-308, subd [b], par [8]) |
| (6) Nevada | (Nev Rev Stat, § 14.065, subd [2], par [e]) |
| (7) New Mexico | (NM Stat Ann, § 21-3-16, subd A, par [5]) (Smith 1975) |
| (8) Ohio | (Ohio Civil Rule 4.3, subd [A], par [8]) (Anderson 1979) |
| (9) Oklahoma | (Okla Civ Pro, § 1701.03, subd [a], par [7]) |
| (10) Texas | (Tex Fam Code Ann, § 3.26) (Vernon 1979) |
| (11) Utah | (Utah Code Ann, § 78-27-24, subd [6]) |
| (12) Wisconsin | (Wis Stat, § 801.05, subd [11]) |

tion of the United States." (Okla Stat Ann, tit 12, § 1701.03, subd [a], par [7].)

In sum, I can see no reason why CPLR 302 (subd [b]) should not be read literally, to permit the exercise of personal jurisdiction over an out-of-State defendant whenever the plaintiff is a resident of New York and this State was the matrimonial domicile of the parties at some time before their separation, providing such exercise does not run afoul of the mandates of constitutional due process. Under the circumstances of this case, I find that both the jurisdictional requisites of the statute and the minimum contacts between defendant and this State required by due process have been established.

CARDAMONE, J. P., SIMONS, SCHNEPP and DOERR, JJ., concur in *Per Curiam* opinion; MOULE, J., concurs in a separate opinion.

Order reversed, without costs and motion denied.