*288 OPINION OF THE COURT
Andrew Halloran, J.
This is a paternity proceeding which was initiated by the petition of John P. O’Neill, Commissioner of Social Services, dated March 21, 1995, and filed in the Essex County Family Court on March 21, 1995. The petition alleges that W.T. gave birth to a female child, L.A.C., out of wedlock, on or about July 9, 1980 at Glens Falls, New York. The petition further alleges that the respondent, D.J.J., who resides in the State of Tennessee, is the father of said child.
The summons and petition in this matter were mailed to respondent by certified mail on April 4, 1995. Respondent signed a receipt acknowledging delivery on April 6, 1995. On June 13, 1995, the return day of the summons, the respondent failed to appear before the Hearing Examiner of the Essex County Family Court. The matter was, therefore, referred to the Family Court Judge for a default inquest. The matter was adjourned until July 25, 1995 and the respondent was notified by letter of the adjourned date for the default inquest. Respondent failed to appear on July 25, 1995.
The undersigned, after reviewing all of the papers in this proceeding, dismissed the petition on July 25, 1995, on the ground that the court did not have personal jurisdiction over the respondent. Reasons for the dismissal were placed on the record in open court. Subsequently, petitioner’s attorney applied to this court for reargument. Petitioner’s request is denied.
Petitioner argues that this court has jurisdiction over the respondent in this paternity proceeding pursuant to CPLR 302. CPLR 302 Ob) provides, with respect to a Family Court proceeding involving, inter alia, a demand for support, that a court may exercise personal jurisdiction over the nondomiciliary or nonresident respondent if the party seeking support is a resident or domiciliary of this State at the time the demand for support is made, provided that "the claim for support * * * accrued under the laws of this state.”
The mere birth of a child in New York, absent some minimum contact by the respondent with the State of New York, is insufficient to confer personal jurisdiction over such a nonresident respondent. (See, Matter of Leslie GG. v William HH., 175 AD2d 378 [3d Dept 1991].) This court notes that there is no allegation in the petition that the respondent ever had any contact at all with the State of New York. Therefore, this court *289 concludes that it does not have personal jurisdiction over the respondent in this proceeding.
This court notes that Family Court Act § 154 authorizes the Family Court to send process outside of the State of New York where jurisdiction exists under CPLR 302 (b), provided that at least one of six specified conditions exist. One of those conditions is that the child was conceived in the State of New York and the person over whom jurisdiction is sought is a parent or an alleged or probable parent of the child. In this case, there is no allegation in the petition that the subject child was actually conceived in the State of New York. Further, there are no allegations at all relating to the other five conditions set forth in that section. Thus, even if jurisdiction existed under CPLR 302 Ob), this court did not have the authority to send process outside of the State of New York. (See, Porter v Porter, 156 Misc 2d 461.)
Furthermore, Family Court Act § 519 provides that where a putative father of a child dies, becomes mentally ill, or cannot be found within the State, a paternity proceeding may be commenced only where one of four specific conditions exists. None of those conditions exist in this proceeding. It is to be noted that section 519 was enacted in 1987, after the last amendment of Family Court Act § 154 (b) (1983), and also after the last applicable amendment of CPLR 302 (b) (1982). Section 519 was apparently enacted primarily to permit a paternity petition to be filed, or a paternity proceeding to be continued, after the death of the putative father. However, as enacted, the section also applies where the putative father becomes mentally ill or cannot be found within the State. The enactment of section 519 was designed to prevent "false, opportunistic claims.” (See, Goodhue, Mem in support of S 3526, Bill Jacket, L 1987, ch 434; see also, Matter of Janis, 157 Misc 2d 999; Matter of Commissioner of Social Servs. [Deneen C.] v William C., 147 Misc 2d 974.)
Based upon all of the foregoing, this court does not have jurisdiction over the person of the respondent, D.J.J., in this proceeding. It must also be considered that the petitioner in this proceeding has the ability and authority to proceed under the Uniform Support of Dependents Law (hereafter USDL), which is set forth in article 3-A of the Domestic Relations Law, and includes sections 30 through 43. The USDL provides a detailed procedure to be used in a support proceeding where the respondent is found in a jurisdiction other than the State of New York. Furthermore, Domestic Relations Law § 37 (19) *290 provides a mechanism for obtaining a blood test of the mother, the child, and the putative father, as described in Family Court Act § 532.
Recent court decisions have made it clear that the preferred method of determining the identity of a child’s biological father is to use the accurate scientific methods now available, including blood testing. (See, Matter of Richard W. v Roberta Y., 212 AD2d 89; Prowda v Wilner, 217 AD2d 287.) Thus, the use of the USDL procedure, which authorizes blood testing, is preferable to entering a judgment by default under article 5 of the Family Court Act where no blood test results are available or can be obtained.
Based on the foregoing, this court concludes that the court does not have jurisdiction over the respondent, D.J.J., in this proceeding. The court further concludes that the petitioner has available the alternative remedy of proceeding under article 3-A of the Domestic Relations Law, and utilization of that procedure is far more likely to correctly identify the actual biological father of the child.