[648 NYS2d 650]

In the Matter of Shirley D., Appellant, v Carl D., Respondent.

Second Department, October 15, 1996

## APPEARANCES OF COUNSEL

*Bondorowsky & Patel,* Brooklyn *(Barry Bondorowsky* of counsel), for appellant.

*Lawrence B. Newman,* New York City *(Wanessa Abbe Ferber* of counsel), for respondent.

## OPINION OF THE COURT

KRAUSMAN, J.

On this appeal, we are asked to determine whether Family Court Act § 154 (b) provides a basis for extending the court's long-arm jurisdiction beyond that prescribed by CPLR 302 (b), which governs the exercise of personal jurisdiction in matrimonial actions and Family Court proceedings. For the reasons which follow, we conclude that Family Court Act § 154 (b), which was enacted to authorize the exercise of long-arm jurisdiction over nonresident, nondomiciliary respondents in paternity proceedings, subjects a putative father to jurisdiction where he has had at least one of the minimum contacts with this State set forth by that statute as guidelines for the exercise of jurisdiction.

### I

The petitioner in this paternity proceeding, Shirley D., is the mother of a seven-year-old daughter, Lauren, who was born in New York on September 7, 1989. The petitioner alleges that the father of her child is her former boyfriend, the respondent, Carl D. According to the petitioner, the couple began dating in the spring of 1988, while she was living in Brooklyn, and the respondent was attending the New York College of Osteopathic Medicine in Nassau County. The petitioner continued to reside in Brooklyn throughout the course of her relationship with the respondent, and she avers that Lauren was conceived in Brooklyn. Although it is undisputed that the respondent has been a New Jersey resident for many years, the petitioner also alleges that the respondent lived in the Sunset Park area of Brooklyn for an unspecified period of time.

The petitioner claims that during Lauren's infancy, the respondent regularly visited the child and gave her money for child support. In addition, in October 1992, the respondent accompanied the petitioner and Lauren on a vacation in Florida. However, the couple ended their relationship in the fall of 1993, and the petitioner alleges that after their breakup, the respondent began to deny that Lauren was his daughter, and

stopped visiting Lauren. The petitioner responded by commencing this paternity proceeding in the Family Court, Kings County, seeking an order both adjudicating the respondent to be Lauren's father and directing the payment of child support. In her verified petition, the petitioner alleged that the respondent, who resides in Springfield, New Jersey, was Lauren's father, and that the respondent had acknowledged paternity of Lauren in writing and by furnishing support for the child. Acting upon the advice of a New Jersey attorney, the respondent appeared in the proceeding by serving a verified answer to the petition in which he admitted that he had engaged in sexual relations with the petitioner, but denied that he had fathered her child and demanded an HLA blood-grouping test to determine paternity. A blood-grouping test, performed in connection with this proceeding, later revealed a 99.79% probability that the respondent is Lauren's father.

After retaining local counsel, the respondent subsequently moved, *inter alia,* to dismiss the petition for lack of personal jurisdiction. In a supporting affidavit, the respondent argued that the New York State Family Court could not exercise personal jurisdiction over him pursuant to CPLR 302 (b) because he had never been a domiciliary of New York, and did not currently reside in the State. Although the respondent did not deny that he had attended a New York medical school, he averred that he had obtained his medical license in New Jersey, and that he had no plans of ever becoming licensed in this State. Under these circumstances, the respondent asserted that he could not be subject to jurisdiction pursuant to CPLR 302 (b), which authorizes a court, in any matrimonial action or Family Court proceeding, to exercise personal jurisdiction over the defendant or respondent "notwithstanding the fact that he or she no longer is a resident of or domiciliary of this state * * * if the party seeking support is a resident or domiciled in this state at the time such demand is made, provided that * * * the claim for support * * * accrued under the laws of this state". Addressing the issue of whether Family Court Act § 154 (b) could provide an independent basis for the exercise of long-arm jurisdiction, the respondent further contended that while that provision authorizes the court to send process outside the State in paternity or support proceedings where any one of six criteria is shown to exist, it did not authorize the exercise of jurisdiction beyond the scope of CPLR 302 (b).

In opposition to the respondent's motion to dismiss, the petitioner argued that the exercise of personal jurisdiction

would be proper because Lauren had been conceived in Brooklyn while the petitioner was dating the respondent, and because the respondent had attended medical school in Nassau County and lived in the Sunset Park section of Brooklyn, "for a period of time".

The Hearing Examiner denied the respondent's motion to dismiss, reasoning that even if CPLR 302 (b) did not authorize the court to retain jurisdiction over an out-of-State father who had never resided in New York, jurisdiction could be exercised pursuant to Family Court Act § 154 (b) since the child had allegedly been conceived in this State, and the respondent had allegedly acknowledged paternity in writing, thus satisfying two of the alternative criteria set forth for the exercise of jurisdiction under that provision. However, the respondent filed objections to the Hearing Examiner's ruling, and the Family Court sustained his objections and dismissed the petition. Relying upon this Court's decision in *Matter of Nilsa B. B. v Clyde Blackwell H.* (84 AD2d 295), the Family Court reasoned that jurisdiction over a putative father in a paternity proceeding was not available under CPLR 302 (b) because the mother's claim for child support could not be considered a claim which had "accrued under the laws of this state", as required by the statute. Moreover, while the Family Court acknowledged that the Legislature had probably intended to permit the exercise of long-arm jurisdiction in paternity proceedings, it concluded that jurisdiction could not be independently exercised under Family Court Act § 154 (b) where no basis for jurisdiction existed under CPLR 302 (b).

## II

We begin our analysis of the jurisdictional issue raised on appeal by reviewing the fundamental tenets of due process which underpin this State's long-arm jurisdictional scheme, and which must be satisfied in order for a New York court to constitutionally exercise jurisdiction over a nonresident defendant. As a general rule, in order for the courts of one State to exercise jurisdiction over an individual who is domiciled in another State, due process requires that there be sufficient minimum contacts between that individual and the forum State such that the forum State's assertion of jurisdiction will not offend " 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington,* 326 US 310, 316). The minimum contacts standard is designed to protect a defendant from having to litigate in a distant or inconvenient forum with

which he has established no meaningful contacts, ties, or relations *(see, Burger King Corp. v Rudzewicz,* 471 US 462, 471-472), and to prevent the individual States from overreaching the judicial limits appropriate to "their status as coequal sovereigns" *(World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 292).

With these firmly established principles in mind, we turn first to the issue of whether CPLR 302 (b) subjects the respondent putative father to personal jurisdiction. CPLR 302 (b) currently provides, in pertinent part, that a court in any matrimonial action or Family Court proceeding involving a demand for support may exercise long-arm jurisdiction over the respondent or defendant "notwithstanding the fact that he or she no longer is a resident or domiciliary of this state", provided that *"the claim for support * * * accrued under the laws of this state"* (emphasis added). Prior to amendment in 1982, the language of this proviso permitted jurisdiction to be exercised only where the nonresident defendant had an "obligation to pay support". In *Matter of Nilsa B. B. v Clyde Blackwell H.* (84 AD2d 295, *supra),* this Court held that the "obligation to pay support" language of CPLR 302 (b) precluded the exercise of jurisdiction in a paternity proceeding where a finding of paternity had not yet been made. The *Nilsa* Court reasoned that since it is only through a paternity proceeding that a putative father's obligation to pay support may ultimately accrue upon entry of orders of filiation and support, no obligation to pay support could be deemed to exist at the time a paternity proceeding is commenced. Concurring in a separate opinion, former Justice Lazer pointed out that the exercise of long-arm jurisdiction over a putative father who had allegedly conceived a child during visits to New York would not offend due process, and urged the Legislature to give attention to New York's overly restrictive jurisdictional scheme *(supra,* at 307).

The Legislature responded, in the spring of 1982, by amending CPLR 302 (b) to change the phrase "obligation to pay support" to "claim for support" (L 1982, ch 505). In an accompanying memorandum by the Executive Director of the Law Revision Commission relating to New York Senate Bill No. S 8710 (1982), it was expressly noted that the amendment was designed to overrule *Matter of Nilsa B. B.,* and thus provide "a basis for the exercise of personal jurisdiction by the courts of New York over a respondent in a paternity proceeding who is neither physically present nor domiciled in New York at the time of service of process (but who once resided in New York)

brought by a resident of New York arising from an act of intercourse that occurred in New York" (Bill Jacket, L 1982, ch 505).

Viewed in light of this background, it is clear that the legislative intent underlying the amendment of the statute would be frustrated if the courts continued to limit the exercise of long-arm jurisdiction under CPLR 302 (b) to those cases in which the parental tie has already been established, and the obligation to pay support has accrued. Accordingly, the Family Court erred in concluding that the petitioner had not met the jurisdictional requirements set forth in the CPLR because "the instant application is not a claim that accrued under the laws of this state".

While we are persuaded that CPLR 302 (b) permits the courts of this State, in appropriate circumstances, to exercise jurisdiction over nondomiciliary putative fathers in paternity proceedings, we must still address the respondent's contention that CPLR 302 (b) is inapplicable because he was never a domiciliary of this State. As previously noted, CPLR 302 (b) enables the court in a Family Court proceeding to exercise personal jurisdiction over a nonresident respondent "notwithstanding the fact that he or she no longer is a resident of or domiciliary of this state", provided that certain additional criteria apply. The petitioner urges us to conclude that a respondent need not be a former domiciliary or resident of New York in order to be subject to jurisdiction under CPLR 302 (b). However, this proposed construction disregards the language of the provision. Moreover, the legislative history of the enactment reveals that the Legislature did indeed intend to limit the exercise of long-arm jurisdiction under CPLR 302 (b) to those instances in which the respondent formerly resided or was domiciled in this State, and that this condition is one of the essential "contacts" with New York, which, when coupled with New York's interest in assuring that resident children be supported by their natural parents where possible, renders the exercise of jurisdiction consistent with due process (see, Mem of Exec Director of Law Rev Commn, op. cit., at 2-3). In the case before us, the respondent avers that he resides in Springfield, New Jersey, and has never been a domiciliary of New York. Although the petitioner states that the respondent attended the New York College of Osteopathic Medicine in Nassau County, she does not allege that the respondent resided in New York during his years as a student, and instead claims only that she believes that he lived in Brooklyn for an unspecified period of time. We

cannot find, on the strength of this vague and unsubstantiated allegation, that the petitioner has established that the respondent is a former resident or domiciliary of New York such that the exercise of jurisdiction pursuant to CPLR 302 (b) would be proper.

## III

We find merit, however, to the petitioner's contention that Family Court Act § 154 (b) provides an independent basis for the exercise of long-arm jurisdiction over the respondent. Under Family Court Act § 154 (b), the Family Court, "[i]n a proceeding to establish paternity or to seek support", "may send process without the state in the same manner and with the same effect as process sent within the state in the exercise of personal jurisdiction over any person, subject to the jurisdiction of the court under section * * * three hundred two of the civil practice law and rules, notwithstanding that such person is not a resident or domiciliary of the state", where any one of six alternative criteria is shown to exist. These six criteria are:

"(1) the child was conceived in this state and the person over whom jurisdiction is sought is a parent or an alleged or probable parent of the child; or

"(2) the child resides in the state as a result of the acts or directives of the person over whom jurisdiction is sought; or

"(3) the person over whom jurisdiction is sought has resided with the child in this state; or

"(4) the person has acknowledged paternity, in writing, or has furnished support for the child while either such person or the child resided in the state; or

"(5) the person has filed with the putative father registry maintained by the state department of social services; or

"(6) there is any basis consistent with the constitutions of this state or the United States for the exercise of personal jurisdiction".

An examination of the legislative history reveals that Family Court Act § 154 (b) was enacted to "remove any doubt" about the applicability of long-arm jurisdiction in paternity and support proceedings, and enable "paternity to be more readily established in cases where the absent probable parent resides in another state", thereby increasing support collections (Mem of NY State Dept of Social Servs; Budget Report on 10 and 30 Day Bills [Bill Jacket, L 1983, ch 291]). In a memorandum issued in support of the enactment, the New York State Department of Social Services noted that:

"Although 'long arm' jurisdiction has been available in most civil actions and proceedings under Section 302 of the Civil Practice Law and Rules, such has not been the case in Family Court paternity and support proceedings. Chapter 505 of the Laws of 1982 was enacted to overcome this anom[a]ly and to permit exercise of personal jurisdiction over non-residents, non-domiciliaries if the claim for support arose in this state.

"The recent enactment by the Legislature expanded the long-arm jurisdiction to include Family Court support and paternity proceedings * * * [and i]n order to overcome any possible objections to service of process without the State to obtain personal long-arm jurisdiction over non-residents, non-domiciliaries, Section 154 would be expanded to account for the exercise of long-arm jurisdiction in these proceedings.

"The proposal would also establish certain 'minimum contacts' which would be required for the exercise of jurisdiction over such non-residents, non-domiciliaries. These 'minimum contacts' would provide the court with guidelines as to their exercise of jurisdiction in these proceedings" (1983 McKinney's Session Laws of NY, at 2501).

It thus clearly appears that the Legislature intended satisfaction of any one of the six criteria set forth in Family Court Act § 154 (b) to constitute a minimum contact with the State upon which the exercise of jurisdiction could constitutionally be predicated.

Despite the fact that Family Court Act § 154 (b) was enacted to facilitate the exercise of jurisdiction over nonresident respondents, a leading commentator points out that the provision is inartfully drafted, which has led some courts to question its reach (see, Besharov and Lichtiger, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 29A, 1996 Pocket Part, Family Ct Act § 154, at 17; *Porter v Porter,* 156 Misc 2d 461; *Matter of O'Neill v D.J.J.,* 167 Misc 2d 287). In *Porter v Porter (supra),* the court held that Family Court Act § 154 (b) was narrowly geared towards authorizing the court to send process without the State only if a basis for the exercise of long-arm jurisdiction otherwise existed under CPLR 302. In reaching its determination, the *Porter* court acknowledged that "the spirit and intent of the law is to make it easier to enforce support obligations", but concluded "[t]he Legislature has not yet seen fit to reflect this intent in a statute which would permit an action such as [the] petitioner contemplates" *(Porter v Porter, supra,* at 464). The court also pointed out that the petitioner had a remedy under the Uniform Support of Depen-

dents Law (Domestic Relations Law art 3-A). In contrast, the Third Department has held that Family Court Act § 154 (b) was enacted to extend the court's long-arm jurisdiction beyond the scope of CPLR 302 (b), and that the statute permits jurisdiction to be exercised whenever one of the six specified criteria is shown to exist *(Matter of Spak v Specht,* 216 AD2d 705).

In interpreting the reach of a statutory provision, the courts must look first to the particular words of the provision for their meaning, both as they are used in the subject section, and in their context as part of the entire statute *(see, Catlin v Sobol,* 77 NY2d 552, 558; *Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals,* 77 NY2d 114). In addition, the court "may also consider the legislative history of the enactment * * * bearing in mind 'that in "the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. *The legislative intent is the great and controlling principle" (People v Ryan,* 247 NY 149, 152)' " *(Catlin v Sobol, supra,* at 558 [emphasis in origininal]; *Ferres v City of New Rochelle,* 68 NY2d 446, 451). Guided by these precepts, we find that although Family Court Act § 154 (b) contains language suggesting that the statute's reach should be limited to those persons otherwise subject to long-arm jurisdiction pursuant to CPLR 302, the provision, when read in its entirety and viewed in the context of its legislative history, permits the Family Court, in a paternity proceeding, to exercise personal jurisdiction over a nonresident respondent where one of the minimum contacts delineated in the statute, which is designed to ensure due process, is shown to exist. This conclusion is further supported by the fact that the subject provision concludes with a broad catch-all phrase permitting jurisdiction to be exercised where consistent with the United States and New York Constitutions. Moreover, while a New York resident may, pursuant to the Uniform Support of Dependents Law, commence a support proceeding in the respondent's home State, the existence of this additional remedy does not deprive the petitioner of any other remedy which may be properly pursued in her home State *(see, Matter of Spak v Specht, supra).* Consequently, in the case before us, where the record establishes that the petitioner and Lauren reside in New York, and it is undisputed that Lauren was conceived in New York, we find that the exercise of personal jurisdiction is permitted by Family Court Act § 154 (b) and would not offend due process.

We have examined the parties' remaining contentions, and find that they are without merit.

Consequently, the order is reversed, on the law, the motion to dismiss the petition is denied, and the petition is reinstated,

O'BRIEN, J. P., THOMPSON and ALTMAN, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, the motion to dismiss the petition is denied, and the petition is reinstated.