OPINION OF THE COURT
Jeffrey S. Sunshine, J.
*863 By order to show cause dated March 22, 2004, plaintiff Sharon Senhart moves for an order, pursuant to CPLR 2004, 2005 and 3012 (d), to extend her time to serve a complaint, nunc pro tunc. By order to show cause dated April 15, 2004, plaintiff moves for an order (1) allowing her to withdraw the order to show cause dated March 22, 2004, and to substitute a second order to show cause; (2) pursuant to CPLR 2004, 2005 and 3012 (d), allowing her to serve the proposed amended complaint annexed thereto, nunc pro tunc; and (3) enjoining and restraining defendant, his agents, servants, and/or employees from prosecuting and proceeding with an action for divorce which he commenced in the Circuit Court of Florida, Fourth Judicial District, Duval County, case number 2004-DR-003054 (the Florida action). Defendant cross-moves for an order dismissing plaintiffs action (1) pursuant to CPLR 3211 (a) (8) and 302 (b), on the ground that the court lacks personal jurisdiction over him; (2) pursuant to CPLR 327, on the ground that Florida is the more convenient forum to resolve the parties’ marital dispute; (3) pursuant to CPLR 3211 (a) (7), on the ground that the complaint fails to state a cause of action; (4) pursuant to CPLR 3211, on the ground that the Florida action is pending; and (5) pursuant to CPLR 3012, on the ground that the complaint was untimely served.
Procedural Background
The parties were married in Pensacola, Florida, on October 24, 1976. They have one emancipated child, Ben, born on June 2, 1977.
On November 13, 2003, plaintiff commenced this action seeking a judgment of divorce, equitable distribution, maintenance, and other ancillary relief by summons with notice; on November 17, 2003, defendant was served. In accordance with the parties’ agreement granting him an extension of time in which to do so, defendant served a notice of appearance on January 7, 2004. Thereafter, plaintiff requested an extension of time in which to serve her complaint; the parties agreed that service would be made by February 22, 2004. When plaintiff served her complaint on March 16, 2004, defendant rejected it as untimely. The instant motions and cross motion followed.
On March 24, 2004, defendant commenced the Florida action; plaintiff was served therein on April 1, 2004.
Defendant’s Cross Motion to Dismiss for Lack of Jurisdiction
The court will first address defendant’s contentions that the court does not have jurisdiction over him, since dismissal of the *864 action on this ground will render the remaining issues raised in the motions and cross motion moot.
There is no dispute that, following their wedding in November 1976, the parties moved to East Greenwich, Rhode Island, where they lived for approximately three years. In 1978 or 1979, the family moved to Orange Park, Florida.
Defendant’s Contentions
Defendant contends that he and plaintiff continued to reside in Orange Park, Floridafuntil plaintiff told him in May 1985 that she wanted to separate and she and Ben moved to Flushing, New York. Defendant avers that he never wanted plaintiff and Ben to move. Defendant also alleges that although the parties attempted a reconciliation in 1987, when plaintiff returned to Florida for a short time, plaintiff again abandoned him and returned to New York, so that the marriage was effectively over in 1987. Defendant further claims that he has resided in Jacksonville Beach, Florida, since 1987.
Defendant thus concludes that this court does not have jurisdiction over him, since the parties’ marital domicile, prior to their separation, was located in Florida; that plaintiff abandoned him in Florida in 1987; that he and plaintiff last had sexual relations in Florida in 1987; that he and plaintiff never resided in New York as husband and wife; that he has lived in Florida for nearly 30 years; that he and plaintiff have filed joint income tax returns in Florida since approximately 1980; and that all of his businesses and financial documents are in Florida. Further, defendant asserts that his only contact with New York State has been his occasional visits to his son.
Plaintiffs Contentions
In opposition, plaintiff admits that she and Ben have lived in New York from 1981 through the present time. More particularly, plaintiff alleges that, in 1979, she expressed her desire to return to New York, where she was raised, because defendant wanted Ben to attend school in New York; plaintiff thought they would be safer in a location that was less isolated than their house in Florida; and the parties were experiencing marital problems, including defendant’s alleged violent behavior toward plaintiff. Accordingly, in 1981, she and defendant rented an apartment in Flushing; they later purchased an apartment in their joint names; and in 1989 plaintiff purchased an apartment in her name, individually. Plaintiff contends that throughout this period, until 1990, she and defendant lived as husband and wife. Plaintiff further alleges that defendant fully consented *865 to and cooperated with her move to New York and that he spent approximately one week every month residing with her and Ben in New York, or approximately 12% to 25% of his time. Further, plaintiff asserts that defendant telephoned her every night and repeatedly told her that he intended to liquidate his properties in Florida and start a business in New York.
In addition, plaintiff admits that, in 1985, defendant asked her to return to Florida and to live there permanently. She also corroborates defendant’s assertion that, in 1987, she spent a few months in Florida, but adds that she returned to New York when defendant’s violence toward her resumed. According to plaintiff, from 1987 through 1990, defendant continued to visit her and Ben in New York and the parties never proclaimed the marriage to be over, except when defendant so stated while in a rage. In fact, plaintiff avers that, until 2000, defendant expressed a desire to live in New York full time and, until 2001, he told her that they were still a family. To further support this claim, plaintiff annexes copies of six letters that defendant wrote to her and/or Ben during 2000 and 2001, which she argues indicate that they maintained an ongoing relationship.
Plaintiff further asserts that, in 1990, she learned that defendant was having an affair in Florida. When she discussed the matter with him, he urged her to go to Florida; she agreed. During her visit, the parties engaged in sexual relations and plaintiff became pregnant. At defendant’s request, however, plaintiff had an abortion. The next day, defendant threatened plaintiff, chased her out of the house, and locked all of the doors. As a result, plaintiff left, has not returned to Florida, and she and defendant have not been intimate since that time. After 1990, defendant continued to come to New York, though not as often, and, when he visited, he would often stay at the Princeton Club or at the Marriott. In 1995, defendant stayed with plaintiff for several weeks, while Ben was hospitalized, at the house that she had purchased in Brooklyn.
Plaintiff thus contends that, while she has lived virtually exclusively in New York since moving to Flushing in 1981, defendant has maintained two residences, one in New York and one in Florida. Plaintiff accordingly denies that she abandoned defendant in Florida, and instead argues that he abandoned her in New York. She therefore concludes that the facts demonstrate that this court has jurisdiction over defendant.
Defendant’s Reply
In reply, defendant denies that he maintained two residences and he asserts that plaintiffs allegations support his contention *866 that she abandoned him in 1987 when she and Ben moved to New York. In fact, defendant argues that the letters relied upon by plaintiff, as supplemented by additional letters that he annexes to his papers, demonstrate that he and plaintiff were separated, since he did not know where to reach her and Ben from time to time and plaintiff was communicating with him at the direction of her attorney. Moreover, defendant contends that plaintiffs claim that he always intended to relocate his business to New York and to reside there is belied by her admission that, in 1985, he asked her to return to Florida to live with him permanently, and their attempt to reconcile in Florida in 1987. In addition, plaintiff admitted that, when defendant visited her and Ben in New York, he stayed either at a hotel or at the Princeton Club, which further undermines her claim that they continued to reside together as husband and wife. Finally, defendant argues that the property that plaintiff claims that they own in New York is held in her name, individually; she negotiated the purchase; she manages the properties; and she alone benefits from the income generated. In contrast, defendant does not own any property in New York and all of his assets, including his business, are located in Florida.
The Law
In seeking to obtain jurisdiction over defendant, who now resides in Florida, plaintiff must rely upon CPLR 302 (b), which provides that
“Personal jurisdiction over non-resident defendant in matrimonial actions or family court proceedings. A court in any matrimonial action or family court proceeding involving a demand for support, alimony, maintenance, distributive awards or special relief in matrimonial actions may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state, or over his or her executor or administrator, if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the claim for support, alimony, maintenance, distributive awards or special relief in matrimonial actions accrued under the laws of this state or under an agreement executed in this state.”
Application of this provision, however, must comport with traditional notions of due process. Hence, “[sjufficient mini *867 mum contacts with this State must be found in order to exercise long-arm jurisdiction over defendant pursuant to CPLR 302 (a) so that ‘ “ ’traditional notions of fair play and substantial justice’ ” were not offended’ ” (Birdsall v Melita, 260 AD2d 809, 810 [1999], lv denied 93 NY2d 812 [1999], quoting Levy v Levy, 185 AD2d 15, 18 [1993], appeal dismissed 82 NY2d 707 [1993], quoting International Shoe Co. v Washington, 326 US 310, 316 [1945], quoting Milliken v Meyer, 311 US 457, 463 [1940]; see generally Matter of Shirley D. v Carl D., 224 AD2d 60 [1996]).
In the case of Lieb v Lieb (53 AD2d 67 [1976]), the Appellate Division, Second Department, interpreted that portion of CPLR 308 (b) which confers jurisdiction over an out-of-state defendant when New York was the matrimonial domicile of the parties before their separation. The parties in Lieb had married in New York and resided here until 1957, at which time they moved to Virginia. In 1969, defendant abandoned plaintiff and the latter returned to New York where, after two years’ residence, she commenced an action for support. Since the parties had not lived together in New York for at least 12 years prior to their separation, the Court (at 72) interpreted the phrase “before their separation” as being subject to an implicit limitation of “at least within the recent past.” The Court reiterated this determination in Staron v Staron (215 AD2d 646 [1995], lv dismissed 87 NY2d 1055 [1996]), stating that
“The term ‘before their separation’ means that the separation of the parties must have taken place in this State ‘at least within the recent past’ (Lieb v Lieb, 53 AD2d 67, 72; Klette v Klette, 167 AD2d 197) or that New York must have been the place of the ‘last substantial matrimonial domicile before the separation’ (Richardson v Richardson, 58 AD2d 861).” (Id. at 646-647; accord Jacobson v Grindlinger, 178 AD2d 507 [1991].)
The Appellate Division, First Department, reached the same conclusion in Klette (167 AD2d 197 [1990]), when it held that personal jurisdiction over a nonresident in Virginia was not obtained where the parties married in New York, resided there for six years, and then moved to Connecticut, where they lived for eight years before separating, with the wife returning to New York and the husband moving to Virginia.
The court recognizes that the Appellate Division of the Third and Fourth Departments have taken a broader view of the statu *868 tory language. For example, in the case of Paparella v Paparella (74 AD2d 106 [1980]), the Fourth Department held that “[t]he language of the statute itself requires only that this State have been the matrimonial domicile of the parties ‘before their separation’, with no temporal refinement placed upon that requirement. Courts should not add restrictions or limitations to the wording of a statute where none exist” (id. at 111 [citation omitted]).
Similarly, in Levy (185 AD2d 15 [1993]), the Third Department found that the construction placed on CPLR 302 (b) in Lieb (53 AD2d 67 [1976]), Richardson (58 AD2d 861 [1977]), and Klette (167 AD2d 197 [1990]) to be unnecessarily restrictive and held that the words “before their separation” should be given an expansive interpretation.[1] The court further notes, however, that the Third Department subsequently refined its position in the case of Babu v Baabu (229 AD2d 758 [1996]). Therein, the Court affirmed the husband’s motion to dismiss for lack of personal jurisdiction, finding that, even assuming that plaintiff established a predicate for jurisdiction under CPLR 302 (b), it would offend due process to subject defendant husband to jurisdiction in this state, since his contacts with New York with respect to the alleged marriage were so attenuated, under circumstances where the couple last resided in the state as husband and wife in 1985, he did not return thereafter, and plaintiff returned in 1990 and commenced the instant action, stating that
“[i]n addition to establishing one of [the predicates for jurisdiction set forth in CPLR 302 (b)], it must also be shown that the defendant has certain mini *869 mum contacts with New York (see, International Shoe Co. v Washington, 326 US 310, 316). Whether the ‘minimum contacts’ requirement is satisfied depends upon whether the quality and nature of the defendant’s activities in New York are such that it is reasonable and fair to require him or her to defend an action in this State (see, Kulko v California Superior Ct., 436 US 84, 92).” (Id. at 758-759.)[2]
Hence, the Babu case brings the law in the Third Department in line with the holdings in the First and Second Departments in that the Court recognized that, despite compliance with CPLR 302 (b), jurisdiction over an out-of-state defendant pursuant to the statute cannot be sustained unless the defendant maintained contacts sufficient to satisfy due process concerns.
Discussion
In accordance with Staron (215 AD2d 646 [1995]), Klette (167 AD2d 197 [1990]), Lieb (53 AD2d 67 [1976]), and Babu (229 AD2d 758 [1996]), the court finds that, even assuming plaintiff was successful in establishing that New York was the marital domicile of the parties through 1990, residence here 13 years before the commencement of the instant action is not sufficient to confer jurisdiction over him premised upon the parties’ marital domicile having been located in this state.
Further, the court finds no merit to plaintiffs claim that defendant abandoned her in New York. In so holding, the court notes that defendant unequivocally denies that he and plaintiff ever resided in this state as husband and wife and plaintiff offers no evidentiary proof to establish her claim to the contrary. Moreover, as noted by defendant, plaintiff’s own allegations belie the veracity of her position. Of particular significance in this regard is plaintiffs assertion that she visited with defendant in Florida in 1987 in response to his request that she live there with him permanently, since this assertion is inconsistent with her claim that she and defendant were residing as husband *870 and wife in New York and that defendant intended to relocate to this state. Further, if she and defendant continued to reside as husband and wife, it is not credible that they would communicate by means of short letters and e-mails, some sent at the urging of counsel. Finally, even assuming that defendant spent 12% to 25% of his time in New York with plaintiff and his son, a fact which is vehemently denied by defendant, the court concludes that such limited contact with New York is insufficient to support a finding that the parties maintained their marital domicile in New York. Hence, the court concludes that plaintiff abandoned defendant in Florida, their “last substantial matrimonial domicile before the separation” (see generally Richardson, 58 AD2d at 861). The court must also note that to establish a precedent that visitation with children in New York State confers jurisdiction to the state for purposes of a divorce may discourage parents from visiting with their children.
Having determined that the parties did not maintain a marital domicile in New York, it follows that plaintiffs claims for maintenance, equitable distribution, and other ancillary relief did not accrue under the laws of this state (cf. Sciame v Sciame, 54 AD2d 977 [1976] [the support provisions of the parties’ judgment accrued under the laws of this state where the parties spent their entire married life together in this state prior to the judgment of separation]; see generally Lieb, 53 AD2d at 70 [each of the three alternative grounds that permit the court to exercise jurisdiction over an out-of-state defendant pursuant to CPLR 308 (b) reflects involvement of the authority of this state, serious marital misconduct under the state’s existing law, or disregard of an order, judgment or agreement which has the sanction of our state law]).
In addition, the court finds that defendant’s minimal contacts with the State of New York are insufficient to satisfy due process requirements for jurisdiction to be upheld. Most significant in this regard is defendant’s assertion that he never resided in New York. Moreover, even taking plaintiff’s allegations with regard to defendant’s residence to be true, defendant has not resided in New York for approximately 13 years before commencement of this action (see generally Lipski v Lipski, 293 AD2d 344 [2002] [plaintiff failed to show any of the bases for personal jurisdiction under CPLR 302 (b) where the documentary evidence demonstrated that, well before the parties separated in 1997 or 1998, the matrimonial domicile had been Vermont, where, among other things, defendant had continu *871 ously resided since 1994, the parties had drivers’ licenses and registered their cars, plaintiff applied for and became a citizen, and which had been listed as the parties’ residence on federal, Vermont and New York tax returns since at least 1997]). Given this passage of time, defendant’s decision to reside in Florida cannot be characterized as an attempt to avoid financial obligations that may be imposed under the laws of this state (cf. Browne v Browne, 53 AD2d 134 [1976], appeal dismissed 40 NY2d 917 [1976] [court had jurisdiction over a defendant who moved to Texas in an effort to avoid paying alimony where the parties were married more than 20 years; they were lifelong residents of New York until the defendant left for Texas in late 1973, immediately before plaintiff commenced the subject action; and plaintiff and three children born of the union continued to reside in New York, noting that this state’s abiding interest in those of the family unit who remained as domiciliaries should not be cut off because a marital partner, for whatever reason, prefers another climate]).
In addressing the issue of whether trips into the state to visit one’s children are sufficient to support a finding of jurisdiction, it is first noted that, although plaintiff alleges that defendant continued to visit her and Ben in New York after 1990, she declines to apprise the court of how frequent his visits were. In addition, the last visit referred to occurred in 1995. Moreover, it has been held that
“[t]he fact that defendant may have consented to and assisted in his family’s move to New York is inconsequential. Nor do defendant’s visits to his children, their schools and therapists in this State or his occasional presence at business meetings here establish sufficient contacts with the State to justify extending in personam jurisdiction over him. ‘The contacts of the defendant with New York are “so attenuated that a finding that personal jurisdiction existed would violate due process principles” (cf., Paparella v Paparella, 74 AD2d 106, 107; see, Kulko v California Superior Ct., 436 US 84, reh denied 438 US 908)’ (Sovansky v Sovansky, supra [139 AD2d 724,] 725).” (Klette, 167 AD2d at 199; see generally Birdsall, 260 AD2d 809 [1999] [defendant’s payment of child support in Virginia, received by plaintiff in New York, coupled with defendant’s visitation and phone calls to the parties’ children, did not amount to purposeful activity within the *872 state sufficient to invoke the benefits and protections of its laws]; cf. Crofton v Crofton, 106 Misc 2d 546 [1980] [plaintiff’s motion to dismiss the affirmative defense of lack of jurisdiction was granted, since the requirements of due process were satisfied where the parties were married and lived in New York as husband and wife in this state for almost 22 years, the plaintiff was granted a judgment of separation in New York and she still continued to reside in the marital residence, the obligation to pay support and alimony accrued under the laws of the State of New York, and the court had an abiding interest in those of the family unit who remained as domiciliaries and they should not be cut off because defendant father preferred another climate]; Zahra v Zahra, 2 Misc 3d 1012[A], 2004 NY Slip Op 50305[U] [2004] [the court found that the husband had the necessary minimal contacts with the state to acquire personal jurisdiction over him for the purpose of seeking support where it credited the wife’s assertions that the parties purchased a co-op in New York and were living there prior to the husband’s abrupt departure and abandonment].)[3]
The court accordingly finds that defendant’s contacts with the State of New York are too attenuated to support a finding of jurisdiction.
*873 Conclusion
That branch of defendant’s motion seeking to dismiss the action pursuant to CPLR 3211 (a) (8) and 302 (b) is granted on the ground that this court does not have jurisdiction over defendant, and the action is dismissed. The court therefore does not reach the merits raised by plaintiff’s motions or in the other branches of defendant’s cross motion.

. The court notes, however, that in Levy, defendant’s contacts with New York are far more significant than in the instant case, since, in that case, the plaintiff and defendant were married in New York in 1970 and resided in the matrimonial residence there; their first child was born in New York in 1973; they moved to Massachusetts in 1974 and then to Texas in 1976; they reestablished their marital domicile in New York in August 1979; they next moved to California sometime after July 1981, with the understanding that they would continue their marriage and that defendant would not be involved in homosexual relationships; when defendant failed to abide by this understanding in California, plaintiff moved back to Tompkins County in October 1982 with their two daughters, where she currently resides; defendant moved to Onondaga County in 1987 and resided there until he moved to New Jersey in 1988; in the fall of 1989, defendant moved to Washington where he still resides, but he visited Tompkins County on numerous occasions, especially when he resided in Onondaga County, and often stayed with plaintiff and his daughters in Tompkins County, during which time the parties presented themselves to the community as a family.

. More specifically, the parties were divorced pursuant to a judgment rendered in New York County in 1985 and defendant left New York; plaintiff contends that she and defendant resumed their status as a married couple in 1987 pursuant to the common law of Georgia; thereafter, they resided in Kentucky and Illinois, where defendant resided at the time of commencement of the action; according to plaintiff, in August 1989, defendant asked her to accompany his mother to New York, and then called her there to advise her that he was no longer interested in being married to her and to forbid her from returning to Illinois; plaintiff returned to Illinois in March 1990, but defendant refused to reconcile; and plaintiff returned to New York where she commenced this second divorce action in December 1990.

. The court finds plaintiffs contention that the Uniform Interstate Family Support Act (Family Ct Act art 5-B) should be applied by analogy to be unpersuasive. In this regard, it is noted that while the basis upon which jurisdiction may be exercised has been broadened in proceedings seeking to establish paternity; to establish, modify or enforce support obligations; or in seeking to obtain an order of protection or to establish a violation thereof, there is no authority to support a finding that the enactment of these specific provisions of the Family Court Act were intended to broaden the scope of CPLR 308 (b) (see generally Matter of Samuels v Britton, 243 AD2d 570, 570 [1997], appeal dismissed 91 NY2d 1003 [1998] [Family Court Act § 154 (b) “permits the Family Court, in a (child support) proceeding, to exercise personal jurisdiction over a nonresident respondent where one of the minimum contacts delineated in the statute, which is designed to ensure due process, is shown to exist”]; Matter of Shirley D., 224 AD2d 60, 68 [1996] [although Family Court Act § 154 (b) contains language suggesting that the statute’s reach should be limited to those persons otherwise subject to long-arm jurisdiction pursuant to CPLR 302, the provision, when read in its entirety and viewed in the context of its legislative history, permits the Family Court, in a paternity proceeding, to exercise personal jurisdiction over a nonresident respondent where one of the minimum contacts delineated in the statute, which is designed to ensure due process, is shown to exist]).