OPINION OF THE COURT
Richard A. Dollinger, J.
In this matter, a complicated question involving the interaction of two separate statutes impacts a father’s intention to permit his teenaged daughter to live with him in New York and not return to his wife, who resides in Tennessee. The father, who has commenced a divorce action in New York against his wife, moves for a temporary court order to permit him to keep his 14-year-old daughter with him in New York State. The wife contends, in a limited appearance, that this court lacks subject *799 matter jurisdiction over the father’s application under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). (Domestic Relations Law § 76.)
The following facts are undisputed: The couple were married in New York in 1997 but in 1998 moved to Tennessee. The couple continuously resided there until the husband moved back to New York in 2010. Since the husband moved back to Rochester near his extended family, the daughter has visited him for numerous periods of time, including lengthy periods of time during the summers. Although the couple was living apart, there was no signed agreement and no court orders relating to any marital property or involving the residence and support for their daughter.
In 2013, the daughter came to New York to visit her father. On June 14, 2013, the husband filed a verified complaint for divorce in Monroe County, seeking among other relief, custody and primary residence of the child. On the same day, the husband filed an order to show cause, requesting temporary physical custody and primary residence of the daughter and appointment of an attorney for the child. The court signed the order granting the husband temporary physical custody of the child until the return date of the motion. The complaint and order to show cause were served on the wife in Tennessee.
In his application, the husband suggests that the daughter wants to live with him in New York and he alleges that the wife and her current boyfriend have engaged in demeaning conduct toward the child, the child is academically behind her grade level, the mother inconsistently administered needed medications to the child and that the child’s education would be improved by transfer to a Monroe County based school district.
The wife secured New York counsel and move to dismiss the “proceedings” brought by the husband pursuant to CPLR 3211 (a) (2), claiming the court lacked subject matter jurisdiction over the child custody question because the UCCJEA vests exclusive jurisdiction over this matter in the child’s home state of Tennessee. The wife does not, at this stage, seek to dismiss the entire divorce proceeding but rather has focused her challenge only to the husband’s claim for a custody determination under the UCCJEA. The mother is a domiciliary of Tennessee. The daughter, who has resided with the mother since the husband relocated to New York, is also a Tennessee domiciliary. The wife reads the statute to preclude any child custody decision by this court unless the husband can show sufficient facts *800 to trigger the statute’s temporary emergency jurisdiction under section 76-c. The wife argues that the husband’s asserted facts— the alleged demeaning conduct, and other actions alleged by the husband — are untrue but further argues that even if true do not rise to the level of an “imminent risk of harm” sufficient to trigger the court’s emergency jurisdiction.
In response, the husband alleges that the child’s temporary residence in New York during summer visits in 2012 and 2013, periodic additional visits, combined with a supportive family network, constitutes “substantial contact” with this state and “provides this Court with jurisdiction” and reiterates the child’s desire to reside in New York with him.
In considering this matter, there is little dispute that the husband has established residency in New York sufficient to maintain an action for divorce. The couple were married in New York and the husband has resided in this state for a period in excess of one year. (Domestic Relations Law § 230 [1].) The husband meets New York’s residency requirements to commence the action. In addition, there is no dispute that Supreme Court has subject matter jurisdiction over this divorce action. (Lacks v Lacks, 41 NY2d 71 [1976]; Black v Black, 108 AD3d 842 [3d Dept 2013].) This court acknowledges that the New York State Supreme Court has been called a court of general “unlimited and unqualified jurisdiction.” (Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718 [1997].) This court is competent to entertain all causes of actions — including this divorce action— unless its jurisdiction has been specifically proscribed. (Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166 [1967].) Therefore, the court clearly has subject matter jurisdiction over a divorce action and all of its ancillary components including child custody.
But, the real question is whether this court has personal jurisdiction over the wife to adjudicate the divorce and custody matters. If this court has personal jurisdiction over the wife under CPLR 302 (b), then this court can adjudicate the custody question as part of its determinations in the divorce action. If the court lacks personal jurisdiction over the wife under section 302 (b), then the only method to assert jurisdiction over the child would involve invoking the temporary emergency custody provisions of section 76-c of the Domestic Relations Law.
The court’s personal jurisdiction over the wife is defined by CPLR 302 (b) which provides:
“A court in any matrimonial action . . . may exercise personal jurisdiction over the respondent or *801 defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state ... if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the claim for support, alimony, maintenance, distributive awards or special relief in matrimonial actions accrued under the laws of this state or under an agreement executed in this state.” (Haiman v Haiman, 8 Misc 3d 1024[A], 2005 NY Slip Op 51256[U] [Sup Ct, Kings County 2005].)
This court could exercise jurisdiction over the couple’s marriage and child and personal jurisdiction over the wife if the facts supported a finding that some aspect of the long-arm sections of section 302 (b) was implicated in this case. Two aspects of that section are easily ruled out. First, the wife did not abandon the husband in New York. The evidence is all to the contrary: the husband left the wife in the marital residence in Tennessee to move to New York. There is also no allegation that the wife abandoned the husband in this state. Second, even though the husband has resided in New York, the “special relief” sought in this application — custody and primary residence of the child — did not accrue under the laws of New York. (Liddle v Liddle, 30 Misc 3d 1207[A], 2010 NY Slip Op 52320[U] [Sup Ct, Nassau County 2010].) The legislature intended the proviso “the claim for support... or special relief. . . accrued under the laws of this state” in 302 (b) to apply only where the subject proceeding seeks enforcement of a preexisting obligation which has become embodied in an order or judgment of a court. (Id.) Neither factor is present here: there are no prior New York orders and no New York agreements regarding the child.
The final potential basis for jurisdiction under 302 (b) involved a somewhat unsettled rule in New York: whether the existence of a marital domicile in New York at any time during their married life is sufficient to permit the exercise of jurisdiction under 302 (b). Several courts have held that the extension of jurisdiction under 302 (b) only applies if New York is the last domicile of the parties before their separation. (Staron v Staron, 215 AD2d 646 [2d Dept 1995]; Richardson v Richardson, 58 AD2d 861 [2d Dept 1977].) But, the Fourth Department in Paparella v Paparella (74 AD2d 106 [4th Dept 1980]) declined to *802 limit the “marital domicile” provision to just the “last before separation” and Justice Moule, in a concurrence, interpreted the provision in rule 302 (b) to permit the exercise of jurisdiction if New York was the domicile at “some time before their separation” subject to due process limitations (at 111). Other courts have accepted this view, reasoning that the legislature did not intend to require that New York be the last domicile of the couple but only that the couple, at some time, had been domiciled in New York. (Levy v Levy, 185 AD2d 15 [3d Dept 1993].) Regardless of whether the statute requires that jurisdiction be limited to those cases in which New York was the last domicile or a remote domicile, under either analysis, the court must conclude that the exercise of jurisdiction is consistent with the constitutional principles of minimum contacts set forth in International Shoe Co. v Washington (326 US 310, 316 [1945]).
In this court’s view, even though New York may have been the domicile of the couple at one time, that time is sufficiently distant to preclude, as a matter of law, the exercise of jurisdiction because the wife does not have “minimum contacts” with New York (Senhart v Senhart, 4 Misc 3d 862 [Sup Ct, Kings County 2004] [residence 13 years before is not sufficient to establish a basis for jurisdiction under 302 (b)]; Julien v Julien, 78 AD3d 584 [1st Dept 2010] [couple that once lived in New York five years ago but had most recently lived in Florida were not able to establish that New York was their “matrimonial domicile” under 302 (b)]). Even in Paparella v Paparella, the Fourth Department, in affirming the assertion of personal jurisdiction over the nonresident party on the basis of a recent domicile, found that the couple had lived in New York for 25 years and the defendant had only moved out a short time before commencement of the action. (Paparella v Paparella, 74 AD2d at 106.) In this case, there is no evidence that the wife, other than being married in New York and having resided here for a short time more than a decade ago, has had any contacts with New York in the interim. The papers fail to allege any facts that provide a factual basis for establishing “minimum contacts.” Mere visitation of the child with her father pursuant to an unwritten understanding between the parents does not establish sufficient contacts between the husband and wife sufficient to permit New York’s courts to exercise jurisdiction over the divorce or the child. As one court warned: “to establish a precedent that visitation with children in New York State confers jurisdiction to the state for purposes of a divorce may discourage *803 parents from visiting with their children.” (Senhart v Senhart, 4 Misc 3d at 870.) The same logic applies if the child visits their parent in New York; if visitation by the child confers jurisdiction on the New York courts to adjudicate either a divorce or a custody determination, the out-of-state parent will be disinclined to permit such visitation. Given these facts, the quality and nature of the defendant’s activities in New York — permitting her daughter to visit the child’s father — are such that it is not reasonable and fair to require her to defend an action in this State. (See Kulko v Superior Court of Cal., City and County of San Francisco, 436 US 84, 92 [1978].) The husband’s claim that he had an extended family and support network for the child in New York is not sufficient to establish jurisdiction. There are no other facts sufficient to justify exercising personal jurisdiction over the wife or the child in this divorce action under the general long-arm jurisdiction under 302 (b).
Jurisdiction under UCCJEA
While the general grant of long-arm jurisdiction does not enable this court to adjudicate the child custody question as part of a divorce action, CPLR 302 (b) specifically provides that “[t]he family court may exercise personal jurisdiction over a non-resident respondent to the extent provided in sections one hundred fifty-four and one thousand thirty-six and article five-B of the family court act and article five-A of the domestic relations law.” Initially, the final sentence in subdivision (b) does not mention the Supreme Court. In reading this section, it seems apparent that the legislature did not specifically give the Supreme Court long-arm jurisdiction over a nonresident respondent under the UCCJEA. However, the legislative direction falls under the weight of the State Constitution, which provides that Supreme Court does have powers concurrent with those of Family Court, even if Family Court is the sole designated court in CPLR 302 (b). (See NY Const, art VI, § 7.) Supreme Court enjoys a constitutionally guaranteed concurrent jurisdiction over any matter within the jurisdiction of the Family Court. (See e.g. Matter of Renzulli v McElrath, 286 AD2d 335, 336 [2d Dept 2001] [Family Court and Supreme Court have concurrent jurisdiction over “child custody” issues]; Vazquez v Vazquez, 26 AD2d 701 [2d Dept 1966] [Supreme Court has concurrent jurisdiction with Family Court to direct support for children in any appropriate action, whenever that issue may arise]; Matter of Rodriguez v Johnson, 2 Misc 3d 1003[A], 2004 NY Slip Op 50130[U] [Sup Ct, NY County 2004].)
*804 Even though Supreme Court has subject matter jurisdiction over claims for temporary custody brought under article 5-A of the Domestic Relations Law, this court must still find that the jurisdictional prerequisites of section 76 are met before it can take any action in this matter. The wife argues, persuasively, that section 76-a does not grant this court subject matter jurisdiction because the child’s home state is Tennessee. In that regard, the father asserts that section 76-c enables the court to exercise “temporary emergency jurisdiction” over the child if the child is present in the state and has been abandoned or “it is necessary in an emergency to protect the child.” (Domestic Relations Law § 76-c [1].) While present in the state, the child has not been abandoned by the mother. The only basis for exercising emergency jurisdiction exists if the assumption of jurisdiction is necessary to “protect the child.” The Fourth Department has held that the evidence necessary to establish such jurisdiction is an “imminent risk of harm.” (Domestic Relations Law § 76-c [3]; Matter of Bridget Y. [Kenneth M.Y.], 92 AD3d 77 [4th Dept 2011].) The Court noted that the emergency must be real and immediate and of such a nature as to require intervention to protect the child from “imminent physical or emotional danger.” (92 AD3d at 87, citing Matter of Severio P. v Donald Y., 128 Misc 2d 539 [Fam Ct, Richmond County 1985]; see also Matter of Janie C., 31 Misc 3d 1235[A], 2011 NY Slip Op 51007[U] [Fam Ct, Bronx County 2011] [ongoing allegations of sexual assault and abuse including sending of pornographic text messages justified jurisdiction]; Matter of Vanessa E., 190 AD2d 134 [1st Dept 1993] [documented history of sexually inappropriate and voyeuristic behavior by the father justified jurisdiction].) The Fourth Department has reminded trial judges that the emergency exception in section 76-c should be invoked only “rarely and in the most compelling of circumstances.” (Matter of Bridget Y., 92 AD3d at 89.)
In this case, the allegations of parental misconduct do not rise to the shocking level of the allegations in Matter of Bridget Y. which, according to the Fourth Department, featured evidence of parental arrests for abuse, abuse investigations and psychological evaluations of the children. Here, the allegations, while raising questions about whether the wife is providing an environment that is in the best interests of the child, fall short of establishing an “imminent risk of harm.” The husband claims that the child is verbally abused by his wife and her boyfriend, the wife fails to provide “requisite supervision and care both *805 educationally and emotionally” for the 14 year old and does not supervise the child’s talcing necessary medications. The husband produces a November 2010 student evaluation form, which he alleges was filled out by his wife, in which she suggests that the child needs a counselor and yet, he alleges, she has never been seen by a counselor. The mother denies all these allegations. The November 2010 document is more than 2x/2 years old. The report card, which suggests the child should be talcing medications, is also more than 18 months old. These dated documents hardly represent a current picture of the child’s condition or suggest an “imminent risk of harm” if the child is returned to Tennessee.
Finally, the husband produces a letter addressed to him from a social worker, in which the social worker discusses the child’s desire to stay with her father. The social worker describes that the child complained that she has been teased and bullied by her classmates in Tennessee and that had made school “difficult for her.” The social worker also related incidents which made it “difficult to express her concerns to her mother” and one instance in which the mother “dug her fingers in [the child’s] neck.” The social worker’s letter makes no reference to any verbal abuse by the mother or her boyfriend, any harassment by the mother or the mother treating the child, as her father alleges, as “a second class citizen.” Even ignoring the obvious hearsay quality of the letter, the statements contained therein do not suggest an “imminent risk of harm” if the child returns to Tennessee.
Even when the court fully credits all the husband’s allegations, there is insufficient evidence that the child would be subject to an “imminent risk of harm” if this court denied the current request and left that issue to the courts in Tennessee. There are no allegations of physical abuse or any suggestion that the wife would retaliate against the child if the child were returned to Tennessee. In addition, the child’s expressed preference to remain in New York — albeit communicated through the father — does not create an emergency under the statute. (Matter of Severio P. v Donald Y., 128 Misc 2d 539 [Fam Ct, Richmond County 1985]; Matter of Irene R. v Inez H., 96 Misc 2d 947 [Fam Ct, Westchester County 1978].) Finally, there is no suggestion that the possible harm to the daughter could not be alleviated if the husband filed a custody proceeding in the home state of his daughter and pressed his claims that residence in New York would be in her best interests. For these reasons, the husband’s *806 proof does not establish an “imminent risk of harm” sufficient for this court to use the UCCJEA to preempt a decision by the courts in Tennessee to resolve the best interests of this child.
The wife’s motion to dismiss the request for temporary custody is granted. The complaint is also dismissed as well because this court lacks personal jurisdiction over the wife. Because the court lacks jurisdiction over the divorce action and can not invoke the temporary emergency provisions in section 76-c of the Domestic Relations Law, there is no basis for this court to order the father to return the child to Tennessee. From this court’s perspective, the father is under no legal obligation to return the child to the mother until a court in Tennessee issues an order requiring the return of the child or he signs an agreement with his wife to return the child. The child temporarily resides now in New York and until a court of competent jurisdiction orders her to return to Tennessee or orders her father to return her, she can remain here. The court leaves the issue of the best interests of the child to a future proceeding in the courts of Tennessee, the child’s home state, or until such time as New York, as a matter of law, becomes her home state.